MARSHALL R. COLE (SBN 266907)
mcole@nemecek-cole.com
VIKRAM SOHAL (SBN 240251)
vsohal@nemecek-cole.com
**NEMECEK & COLE**
A Professional Corporation
16255 Ventura Boulevard, Suite 300
Encino, CA 91436-2300
Tel: (818) 788-9500 / Fax: (818) 501-0328

Attorneys for Defendants SILO TECHNOLOGIES, INC.
and ASHTON BRAUN

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| MELON CORP., <br><br> Plaintiff, <br><br> vs. <br><br> SILO TECHNOLOGIES, ASHTON BRAUN, and DOES 1 THROUGH 20, each individually, <br><br> Defendants. | Case No.: 24-CV-04781-VKD <br><br> Honorable Virginia K. DeMarchi <br><br> **NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY ACTION; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> [*Filed concurrently with Declaration of Jeff Butler; Declaration of Vikram Sohal; and [Proposed] Order*] <br><br> Date: November 26, 2024 <br> Time: 10:00 a.m. <br> Crtrm.: 2 <br><br> Complaint Filed: August 26, 2024 <br> Trial Date: Not Set |

1

**MOTION TO COMPEL ARBITRATION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on November 26, 2024, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 2 of the above-captioned Court, located at 280 South 1st Street, San Jose, California 95113, Defendants Silo Technologies, Inc. ("Silo") and Ashton Braun ("Braun") (collectively, "Defendants") will and hereby do move the Court for an order compelling arbitration of the claims asserted against them by Plaintiff Melon Corp. ("Plaintiff") and to stay this action pending the conclusion of the arbitration.

This motion is made pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA") and Silo's Future Receivables Sale & Merchant Cash Advance Agreement ("Cash Advance Agreement" or "MSA"), the terms of which Plaintiff accepted on more than **five (5) different occasions**, and which contains a mandatory arbitration agreement. Through the Cash Advance Agreement, Plaintiff agreed to arbitrate "[a]ny Dispute arising from or relating in any way to this Agreement or to the relationship formed between the parties as a result of this Agreement . . . no matter what theory they are based on." The Agreement provides for mandatory arbitration pursuant to the rules of the American Arbitration Association and to submit to the arbitrator any objections with respect to the existence, scope, or validity of the arbitration agreement itself. Plaintiff's claims at issue against Silo fall squarely within the scope of the arbitration clause of the Cash Advance Agreement.

Moreover, while Braun was not a party to the Cash Advance Agreement in his individual capacity, it is settled law that "agents of a signatory can compel the other signatory to arbitrate so long as (1) the wrongful acts of the agents for which they are sued relate to their behavior as agents or in their capacities as agents and (2) the claims against the agents arise out of or relate to the contract containing the arbitration clause." *Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F. Supp. 2d 825, 830 (N.D. Cal. 2007), citations omitted. As detailed in the attached memorandum, that criteria is met here. Additionally, Plaintiff's claims against Braun are subject to arbitration under the doctrine of equitable estoppel because said claims are intimately founded in and intertwined with the underlying contract obligations. *See Murphy v. DirecTV, Inc.,* 724 F.2d 1218, 1230 (9th Cir. 2013).

Both Defendants, therefore, respectfully request that the Court grant their motion and order Plaintiff to submit its claims to arbitration. Additionally, Defendants request that the Court stay this case pending conclusion of the arbitration proceedings.

This motion is being filed after Defendants' meet-and-confer attempts were unsuccessful. (*See* Declaration of Vikram Sohal ¶ 2, Exhibit 3.)

The motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declarations of Jeff Butler and Vikram Sohal, the [Proposed] Order, any oral argument as may be presented at the hearing, all other papers, records, and pleadings on file in this action, and on such additional evidence as the Court may allow.

DATED: October 7, 2024　　　　　　　　　　　　　NEMECEK & COLE

By: /s/Vikram Sohal
Vikram Sohal, Esq.
Attorneys for Defendants, SILO TECHNOLOGIES, INC. and ASHTON BRAUN

NEMECEK & COLE
A PROFESSIONAL CORPORATION
16255 Ventura Boulevard, Suite 300, Encino, California 91436-2300
TELEPHONE (818) 788-9500 FACSIMILE (818) 501-0328

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................... 5

II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ............... 5

    A. Plaintiff's Participation in Silo's Cash Advance Program ..................... 5

    B. The Arbitration Clause of the Cash Advance Agreement ...................... 6

    C. Plaintiff's Complaint Against Defendants .............................................. 7

III. ARGUMENT ............................................................................................. 8

    A. The FAA's "Emphatic Federal Policy" in Favor of Arbitration Applies Here ......................................................................................... 8

    B. Plaintiff Entered Into An Arbitration Agreement With Silo .................. 8

    C. The Arbitration Agreement is Valid and Enforceable ............................ 9

    D. The Scope of Arbitration Clause Covers This Dispute. ........................ 10

    E. The Claims Against Braun Are Also Subject To The Arbitration Clause ..................................................................................................... 12

    F. The FAA Requires a Stay ...................................................................... 14

IV. CONCLUSION ......................................................................................... 14

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Silo Technologies, Inc. ("Silo") and Ashton Braun ("Braun") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to compel Plaintiff Melon Corp. ("Plaintiff") to arbitrate its claims at issue against both Defendants and to stay the action pending conclusion of the arbitration.

## I.  INTRODUCTION

In direct contravention of a valid, binding, and expansive arbitration clause contained in the governing contract between the parties, Plaintiff filed this lawsuit against Defendants. Defendants respectfully move to stay the litigation and to compel arbitration of all claims against all Defendants pursuant to Section 17 of the Future Receivables Sale & Merchant Cash Advance Agreement ("Cash Advance Agreement," also referred to in the Complaint as the "MSA").

## II.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.  Plaintiff's Participation in Silo's Cash Advance Program

Silo is the provider of technology solutions for the food supply chain. Through its Cash Advance Program, it provides products and services to businesses in the produce and agriculture industries to meet their capital needs.

In order to qualify for Silo's Cash Advance Program, a customer is required to, among other things, sign and submit "Cash Advance Program Order Form" ("Order Form") to Silo. (Declaration of Jeff Butler ("Butler Decl.") ¶¶ 2-3.) Each and every Order Form contains a section entitled, "**Terms of Service**" that reads as follows:

> The Order Form, Customer's use of the Silo Cash Advance program, and receipt of any related services is subject to our Master Service Agreement which is incorporated herein by reference.
>
> [Master Service Agreement](#)
>
> By signing below, the parties hereby agree to all the terms and conditions of this Order and Master Service Agreement.

(Butler Decl. ¶ 3.)

The text "Master Service Agreement" as used in the Order Forms is in reference to—and the text specifically links to—a document entitled "Future Receivables Sale & Merchant Cash Advance Agreement" ("Cash Advance Agreement"). (*Id.*) Silo's customers specifically accept and agree to

the terms of the Cash Advance Agreement by signing the Order Forms. Silo expects its customers to review the Cash Advance Agreement before submitting an Order Form and a link to that Agreement is provided right above the signature block of each Order Form.[1] (*Id.*)

Plaintiff entered into Silo's Cash Advance Program by submitting Order Forms on February 7, 2024, February 12, 2024, February 13, 2024, March 5, 2024 and May 3, 2023. (Butler Decl. ¶ 4, Exhibit 1.) The Order Forms were signed by Gurdeep Billan in his capacity as Plaintiff's Executive Director. Each of the foregoing Order Forms signed and submitted by Plaintiff incorporated by reference and linked to the Cash Advance Agreement. (Butler Decl. ¶ 5, Exhibit 2.)

### B. The Arbitration Clause of the Cash Advance Agreement

The Cash Advance Agreement contains an arbitration clause that is broad and mandatory. Specifically, Section 17 of the Cash Advance Agreement entitled "**Arbitration**" states:

> PLEASE READ THIS PROVISION CAREFULLY. IT PROVIDES THAT ANY DISPUTE SHALL BE RESOLVED BY BINDING ARBITRATION AND THAT (i) SELLER IS GIVING UP ITS RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST SILO OR RELATED THIRD PARTIES; (ii) SELLER IS GIVING UP ITS RIGHT TO HAVE A COURT RESOLVE ANY CLAIM ALLEGED AGAINST SILO OR RELATED THIRD PARTIES; (iii) SELLER IS GIVING UP ITS RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT OR ARBITRATION FILED AGAINST SILO OR RELATED THIRD PARTIES.

(Exhibit 2—Cash Advance Agreement at pp. 9-10.)

Section 17.1 specifically addresses the *scope* of the arbitration agreement. It states:

> Any Dispute arising from or relating in any way to this Agreement or to the relationship formed between the parties as a result of this Agreement, including Disputes regarding the applicability of this arbitration clause or the validity of the entire Agreement, shall be resolved exclusively and finally by binding arbitration administered by the American Arbitration Association ("AAA"). All Disputes are subject to arbitration, no matter what theory they are based on. This includes

---

[1] The Cash Advance Agreement states: "This Future Receivables Sale & Merchant Cash Advance Agreement, which includes the Order Form and any substantially similar order form signed in the future by both parties, (this 'Agreement') is effective as of the latter date of: (i) the date of acceptance by on behalf of the business entity listed as "Seller" in the Order Form (the 'Seller', 'you', 'your'); and (ii) the date of acceptance by Silo Technologies, Inc., a Delaware corporation ('Silo'). A subsequent Order Form becomes part of this Agreement when signed by both parties. (Butler Decl. ¶ 5, Exhibit 2 at p. 1.)

**MOTION TO COMPEL ARBITRATION**

> Disputes based on contract, tort, agency, statute, regulations, or any other source of law. Seller and Silo shall agree on another arbitration forum if the AAA ceases operations. This arbitration agreement applies to all Disputes now in existence or that may arise in the future. Nothing in this Agreement prevents either party's use of (or advancement of any Disputes, defenses, or offsets in) bankruptcy or repossession, replevin, judicial foreclosure or any other prejudgment or provisional remedy relating to any collateral, security, or other property interests for contractual debts now or hereafter owned by either party to the other.

(Exhibit 2—Cash Advance Agreement at p. 10.)

The "Scope of Arbitration" provision refers to the defined term "Disputes," which is defined in Section 19(d) of the Cash Advance Agreement as follows:

> "<u>Dispute</u>" means any claim, controversy, or dispute between Seller and Silo (or its respective affiliates, agents, directors or employees), whether arising before or during the effective period of this Agreement, and including any claim, controversy or dispute based on any conduct of Seller or Silo that occurred before the effective date of this Agreement, including any claims relating in any way to the Services, this Agreement, or any other aspect of the parties' relationship.

(Exhibit 2—Cash Advance Agreement at p. 12.)

### C. **Plaintiff's Complaint Against Defendants**

On August 6, 2024, Plaintiff filed a Complaint and Demand for Jury Trial initiating this litigation. (ECF 1.)

In the Complaint, Plaintiff asserts fourteen claims against Defendants: Enforcement of the PACA Trust (Count One); PACA Violation: Failure to Maintain Trust (Count Two); Conversion and Unlawful Retention of PACA Trust Assets (Count Three); Breach of Trust and Fiduciary Duty of Loyalty by Co-Trustee of the PACA Trust (Count Four); Operating Without a License: Nev. Rev. Stat. Ann. § 604(A) (Count Five); Breach of Contract (Count Six); Breach of Fiduciary Duty (Count Seven); Tortious Interference with Receipt of Trust Assets (Count Eight); Negligence/Negligence Per Se Statutory Failure to Abide (Count Nine); Fraudulent Concealment/Suppression (Count Ten); Intentional Interference with Prospective Economic Advantage (Count Eleven); Statutory Recission, Cal. Civ. Code. § 1689 (2024) (Count Twelve); Statutory Recission, Cal. Civ. Code. § 1689 (2024) (Count Thirteen); and Injunctive Relief (Count Fourteen).

As demonstrated below, Plaintiff's claims at issue in the Complaint arise from and/or are

inextricably intertwined with the Cash Advance Agreement and, therefore, are subject to that Agreement's binding arbitration clause.

## III. ARGUMENT

### A. The FAA's "Emphatic Federal Policy" in Favor of Arbitration Applies Here

The FAA establishes that agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects an "emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (citations omitted). "[T]he FAA's purpose is to give preference (instead of mere equality) to arbitration provisions." *Mortensen v. Bresnan Commc'ns LLC*, 722 F.3d 1151, 1160 (9th Cir. 2013); see also id. at 1159 ("[W]e follow the Supreme Court's premise in *Concepcion* that the FAA's purpose is to 'ensur[e] that private arbitrations are enforced.'") (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 334 (2011)).

As explained by the court in *Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d 1024 (N.D. Cal. 2020), "[i]n ruling on a motion to compel arbitration under the FAA, the district court's role is typically limited to determining whether (i) an agreement exists between the parties to arbitrate; (ii) the claims at issue fall within the scope of the agreement; and (iii) the agreement is valid and enforceable." *Id.* at 1035. If, as here, the parties enter into a valid arbitration agreement, then § 4 of the FAA authorizes the district courts to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement" if one of the parties fails, neglects, or refuses to arbitrate. *See* 9 U.S.C. § 4.

### B. Plaintiff Entered Into An Arbitration Agreement With Silo

As detailed in Section II(A), *supra*, Plaintiff signed and submitted Order Forms on five separate occasions in order to qualify for Silo's Cash Advance Program. (Butler Decl. ¶ 4, Exhibit 1.) Every single one of those Order Forms specifically incorporated and linked to the Cash Advance Contract. (*Id.*) The Order Forms specifically provided that, "By signing below, the parties hereby agree to all the terms and conditions of this Order and Master Service Agreement [i.e., the Cash Advance Agreement]."

Thus, Plaintiff (through its Executive Director), agreed to the terms of the Cash Advance

Agreement at least *five different times*.

Indeed, Plaintiff cannot deny entering into the Cash Advance Agreement with Silo as that Agreement is alleged throughout its own Complaint. (*See, e.g.,* Complaint at ¶ 79 ["Silo's position of control over Plaintiff also included the ability to control Plaintiff's cash flow by operation of the Instant Pay Program contract (defined below) and Future Receivables Sale and Merchant Cash Advance Agreement (defined below)."]; Complaint at p. 15, n. 1 ["Silo's Future Receivables Sale & Merchant Cash Advance Agreement (defining a 'person' to mean 'an individual, a corporation, a partnership, limited liability company, associates, trust, unincorporated organization, or other legal entity or organization, or a government body.')"] Complaint at ¶ 118 ["On or about January 5, 2024, Plaintiff executes the first of six Cash Advance Program Order Forms, thereby entering into Silo's unsigned and misidentified Future Receivables Sale & Merchant Cash Advance Agreement which was incorporated into the signed Cash Advance Order Forms by a misidentified reference (the 'Cash Advance Agreement' or 'MCA')."].) Complaint at ¶¶ 243-244 ["Through the MCA, Silo loaned funds into the State of Nevada. Through the MCA, Silo received payments owed to Plaintiff, as the PACA Trustee, in the state of Nevada."].)

Simply put, the Complaint itself establishes Plaintiff entering into the Cash Advance Agreement (aka, "MCA") with the mandatory arbitration clause.

### C. The Arbitration Agreement is Valid and Enforceable

The Court should compel arbitration pursuant to the valid, binding, and enforceable arbitration agreement. In determining whether to compel arbitration, "the court's role is limited to answering the following two questions: (1) is the arbitration agreement valid; and (2) does the arbitration agreement encompass the dispute at issue." *See Munro v. Univ. of Southern California*, 896 F.3d 1088, 1091 (9th Cir. 2018). If the answer to both questions is yes, then the FAA requires arbitration. *Id*.

The arbitration clause in paragraph 17 of the Cash Advance Agreement is valid and covers this dispute. Paragraph 17 states:

> PLEASE READ THIS PROVISION CAREFULLY. IT PROVIDES THAT ANY DISPUTE SHALL BE RESOLVED BY BINDING ARBITRATION AND THAT (i) SELLER IS GIVING UP ITS RIGHT TO HAVE A TRIAL BY JURY TO

RESOLVE ANY DISPUTE ALLEGED AGAINST SILO OR RELATED THIRD PARTIES; (ii) **SELLER IS GIVING UP ITS RIGHT TO HAVE A COURT RESOLVE ANY CLAIM ALLEGED AGAINST SILO OR RELATED THIRD PARTIES**; (iii) SELLER IS GIVING UP ITS RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT OR ARBITRATION FILED AGAINST SILO OR RELATED THIRD PARTIES.

(Exhibit 2—Cash Advance Agreement at § 17 (emphasis added).)

Section 17.1 specifically addresses the *scope* of the arbitration agreement. It states:

Any Dispute arising from or relating in any way to this Agreement or to the relationship formed between the parties as a result of this Agreement, including Disputes regarding the applicability of this arbitration clause or the validity of the entire Agreement, shall be resolved exclusively and finally by binding arbitration administered by the American Arbitration Association ("AAA"). All Disputes are subject to arbitration, no matter what theory they are based on. This includes Disputes based on contract, tort, agency, statute, regulations, or any other source of law. Seller and Silo shall agree on another arbitration forum if the AAA ceases operations. This arbitration agreement applies to all Disputes now in existence or that may arise in the future. Nothing in this Agreement prevents either party's use of (or advancement of any Disputes, defenses, or offsets in) bankruptcy or repossession, replevin, judicial foreclosure or any other prejudgment or provisional remedy relating to any collateral, security, or other property interests for contractual debts now or hereafter owned by either party to the other

The "Scope of Arbitration" provision refers to the defined term "Disputes." Section 19(d) of the Agreement defines a "Dispute" as:

any claim, controversy, or dispute between Seller and Silo (or its respective affiliates, agents, directors or employees), whether arising before or during the effective period of this Agreement, and including any claim, controversy or dispute based on any conduct of Seller or Silo that occurred before the effective date of this Agreement, including any claims relating in any way to the Services, this Agreement, or any other aspect of the parties' relationship.

### D. <u>The Scope of Arbitration Clause Covers This Dispute.</u>

The Court must decide whether the specific dispute at issue falls within the *scope* of the clause, because arbitration "must be had only on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Plaintiffs' claims are "claim[s], controvers[ies], or dispute[s] between Seller and Silo" and are within the scope of the clause. Again, Section 17 states in capital letters that "SELLER IS GIVING UP ITS RIGHT TO

HAVE A COURT RESOLVE **ANY CLAIM** ALLEGED AGAINST SILO OR RELATED THIRD PARTIES." (*See* Exhibit 2, Cash Advance Agreement, § 17 (emphasis added).) Plaintiff's legal claims in the Complaint are clearly "claims" within the meaning of the clause.

The plain text of paragraph 17 is extremely broad. It covers "[a]ny Dispute arising from or *relating in any way* to this Agreement or to *the relationship formed between the parties* as a result of this Agreement, including Disputes regarding applicability of this arbitration clause or the validity of the Entire Agreement . . ." (Emphasis added.). The Ninth Circuit instructs that "when parties intend to include a broad arbitration provision, they provide for arbitration 'arising out of or relating to' the agreement." *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 922 (9th Cir. 2011) (citation omitted), *cert. denied*, 566 U.S. ---, 132 S.Ct. 1862 (2012), *quoting Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d at 1464. The clause at issue here includes Disputes "arising from or relating in way to the Agreement"; therefore, the clause is intentionally expansive.

In *Golden v. Dameron Hosp. Ass'n*, No. CIV. S-12-0751 LKK, 2012 WL 4208779, at *5 (E.D. Cal., Sept. 19, 2012), the district court explained:

> When an arbitration clause is interpreted "broadly," it "reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *Id.,* 175 F.3d at 721. Further, the dispute at issue "need only 'touch matters' covered by the contract," in order for the court to resolve all doubts in favor of arbitration. *Id.,* 175 F.3d at 721, *quoting Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 6214 n. 13 (1985).

In *Golden*, the court contrasted arbitration clauses that contain the words "relating to" (as in this case) with clauses that only encompass disputes "arising under" a contract. Here, paragraph 17 requires arbitration not only for "Dispute[s]" arising from the contract, but those that touch upon "the relationship formed between the parties." Thus, the scope is intended to be as broad as possible.

Here, the claims "arise from or relat[e] . . . to the Agreement" because Plaintiff contends Defendants violated PACA by withdrawing funds allegedly held in a statutory trust. The alleged violations (which Defendants deny) could only have occurred as a result of and in the course of dealing created by the contract containing the arbitration clause. Therefore, Plaintiff's claims are

**MOTION TO COMPEL ARBITRATION**

governed by the arbitration clause. Importantly, there are no carve outs, limitations, exceptions, or exclusions for any of Plaintiff's claims.[2]

### E. The Claims Against Braun Are Also Subject To The Arbitration Clause

While Braun was not a party to the Cash Advance Agreement in his individual capacity, it is settled law that "agents of a signatory can compel the other signatory to arbitrate so long as (1) the wrongful acts of the agents for which they are sued relate to their behavior as agents or in their capacities as agents and (2) the claims against the agents arise out of or relate to the contract containing the arbitration clause." *Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F. Supp. 2d 825, 830 (N.D. Cal. 2007) (citations omitted). That criteria is met here.

Other than introductory allegations against him in the "Parties" section, the Complaint does not include any specific allegations regarding Braun and instead lumps him together with its allegations against Silo. Thus, the allegations against Braun arise out of or relate to the underlying agreements, including the Cash Advance Agreement/MSA. As with its claims against Silo, Plaintiff's claims against Braun are also subject to the arbitration clause of the Cash Advance Agreement.

Additionally, Plaintiff's claims against Braun are subject to arbitration under the doctrine of equitable estoppel. Under Ninth Circuit case law, all claims against Braun should be arbitrated under the doctrine of equitable estoppel. *See Murphy v. DirecTV, Inc.*, 724 F.2d 1218, 1230 (9th Cir. 2013) (stating that the Ninth Circuit follows California's equitable estoppel rule stated in *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 92 Cal. Rptr. 3d 534 (2009)).

Equitable estoppel applies when the plaintiff's claims are intimately founded in and intertwined with the underlying contract obligations and "may apply in certain cases where a

---

[2] There is no carve out or exception for PACA related claims as there was in *Mastronardi Int'l Ltd. v. Sunselect Produce (California), Inc.*, No. 118CV00737AWIJLT, 2018 WL 5262599, at *1 (E.D. Cal. Oct. 19, 2018). The arbitration clause in that case stated that "[i]f the chief executive officers are unable to resolve the dispute, the dispute *shall be settled under procedures set out in PACA, if applicable*, and if not applicable, the parties shall refer the dispute [to binding arbitration.]" Finding that the claims in that case should be resolved by procedures in PACA, the Court declined to compel arbitration. However, this Court should reach the opposite conclusion and compel arbitration because the provision at issue here contains no limiting language.

12

**MOTION TO COMPEL ARBITRATION**

signatory to an arbitration agreement attempts to evade arbitration by suing nonsignatory defendants for claims that are based on the same facts and are inherently inseparable from arbitrable claims against signatory defendants." *Murphy*, 724 F.2d at 1231. Put another way, "[t]he *sine qua non* for allowing a nonsignatory to enforce an arbitration clause based on equitable estoppel is that the claims the plaintiff asserts against the non-signatory are dependent on or inextricably bound up with the contractual obligations of the agreement containing the arbitration clause. *Id.* 537. These tests are satisfied here.

The allegations against Braun flow directly from the contract and are inseparable from the claims against Silo. Briefly revisiting those allegations, Plaintiff alleges Silo loaned money to Plaintiff to finance Plaintiff's melon farming project (Complaint ¶ 23) and that Plaintiff agreed to repay the loan through Plaintiff's produce related accounts receivable. (*See* Complaint ¶ 24.) Plaintiff alleges Silo "received or seized and retained Plaintiff's PACA Trust Assets directly from Plaintiff's Produce customers and through direct ACH or electronic fund withdrawals from Plaintiff's bank account while Plaintiff's Produce suppliers remained unpaid." (Complaint ¶ 110.) Regarding alleged unlicensed lending, Plaintiff alleges Silo "structured its business and contracts in such a manner as to disguise or conceal the fact that it operated as the public facing member or participant of a 'table lending' program targeting, *inter alia*, the fresh Produce industry." (Complaint ¶ 45.)

The allegations against Braun are intimately intertwined with those claims. Plaintiff alleges Braun is the Chief Executive Officer of Silo, is identified on Silo's PACA license as the sole 'Reported Principal'; dominates and controls Silo, and otherwise participated in the tortious conduct or other wrongs alleged in the Complaint. (Complaint ¶ 6.) Thus, the alleged conduct by Braun is inseparable from the alleged conduct of Silo. Plaintiff further alleges that Bruan "improperly shifted the risk of Silo's undercapitalization or bad debt risk to Plaintiff and Silo's other Produce customers" (Complaint ¶ 60), that he was a "co-trustee of Plaintiff's PACA Trust Assets (Complaint ¶ 270), that he "authorized or approved Silo's receipt or seizure and retention of Plaintiff's PACA Trust Assets from Plaintiff's Produce customers and via direct ACH or electronic fund withdrawals from Plaintiff's bank account while Plaintiff's Produce suppliers remained unpaid[]," (Complaint

13

**MOTION TO COMPEL ARBITRATION**

¶ 113), and that he "caused Silo to commit a breach of the PACA trust by, *inter alia*, transferring PACA Trust Assets from Plaintiff to Silo, as a non-PACA trust beneficiary, in violation of its duties under the PACA." (Complaint ¶ 281.)

Because the claims and allegations against Braun are inextricably intertwined with the claims against Silo, all claims in this action should be adjudicated in one arbitration. Proceeding otherwise would result in needless procedural complexity and would be an inefficient use of the Court's and parties' resources.

### F. The FAA Requires a Stay

The FAA provides that, the court "shall on application of one of the parties to stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. District courts frequently stay proceedings after granting motions to compel arbitration. *See, e.g., Slade v. Empire Today, LLC*, 2021 WL 2864813, at *9 (S.D. Cal. July 8, 2021). This court should do the same and stay this action pending the conclusion of the arbitration.

Further, this Court should also stay discovery and other proceedings in this case while the motion to compel arbitration is pending, as other courts have routinely done. *See, e.g., Stiener v. Apple Computer, Inc.*, 2007 WL 4219388, at *1 (N.D. Cal. Nov. 29, 2007) ("In the interest of conserving the resources of the parties, a short stay of the initial scheduling obligations and discovery pending the determination of the motion to compel arbitration is therefore prudent."); *Mahamedi IPL, LLP v. Paradice & Li, LLP*, 2017 WL 2727874, at *1 (N.D. Cal. Feb. 14, 2017) (same, collecting cases).

## IV. CONCLUSION

Plaintiff filed this action in direct contravention of the binding arbitration clause in the Cash Advance Agreement. The FAA and the binding precedent require that this Court enter an order staying this litigation and compelling the parties to arbitration in accordance with their contract.

//
//
//
//

14

**MOTION TO COMPEL ARBITRATION**

DATED: October 7, 2024	NEMECEK & COLE

By: /s/Vikram Sohal
Vikram Sohal, Esq.
Attorneys for Defendants, SILO
TECHNOLOGIES, INC. and ASHTON
BRAUN

## CERTIFICATE OF SERVICE

The undersigned, counsel for Defendants, hereby certifies that a true and correct copy of the foregoing document was made available for viewing and downloading through the Court's CM-ECF system to all counsel of record who are registered to receive a Notice of Electronic Filing for this case.

I declare under the penalty of perjury of the laws of the United States that the foregoing is true and correct. Executed on this 7th day of October 2024 at Garden Grove, California.

/s/Vikram Sohal
Vikram Sohal