Kathryn S. Diemer – SBN 133977
DIEMER WEI LLP
55 S. Market St., Ste 1420
San Jose, CA 95113
(408) 971-6270
kdiemer@diemerwei.com

Jason R. Klinowski – asb-3856-t61s
(Admitted *Pro Hac Vice)*
KLINOWSKI DAMINAO LLP
P.O. Box 43404
Birmingham, AL 35243
(205) 644-8881
jklinowski@aglawyer.com
*Attorneys for Plaintiff Melon Corp.*

## UNITED STATES COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| MELON CORP., | Case No.: 5:24-cv-04781-NW |
| Plaintiff, | Honorable Noël Wise |
| vs. | **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION** |
| SILO TECHNOLOGIES, INC., ET AL, | Hearing Date: April 16, 2025 |
| Defendants. | Time: 9:00 a.m. in Ct. Rm.: 3 |

**TO ALL PARTIES AND COUNSEL OF RECORD, TAKE NOTICE THAT** on Wednesday, April 16, 2025, at 9:00 am, in Courtroom 3 of the above-captioned Court, located at 280 South 1st Street, San Jose, California 95113, Plaintiff Melon Corp. hereby moves this Honorable Court for preliminary injunctive relief enjoining Defendant Silo Technologies, Inc. ("*Silo*") and certain related third-parties as described herein (the "*Motion*"). This Motion is made pursuant to Federal Rule of Civil Procedure 65, and is supported by the attached Declaration of Jason R. Klinowski, counsel to Melon Corp., demonstrating that Silo opposes this Motion (*See* <u>Exhibit A</u>), the concurrently filed Declaration of Gurdeep Billan, and a proposed order attached as <u>Exhibit B</u>.

In this Motion, Melon Corp. asks the Court to enjoin Defendant Silo from further interfering with and causing dissipation of multiple statutory trusts which arise pursuant to the Perishable Agricultural Commodities Act, 7 U.S.C. §499e(c) (hereafter "*PACA*"). PACA provides for the establishment of a statutory trust "in which a produce dealer holds produce-related assets as a fiduciary until full payment is made to the produce seller or producer." *In re San Joaquin Food Serv., Inc.*, 958 F.2d 938, 939 (9th Cir. 1992). "The trust automatically arises in favor of a produce seller upon delivery of produce and is for the benefit of all unpaid suppliers or sellers involved in the transaction until full payment of the sums owing has been received." *In re Milton Poulos, Inc.*, 947 F.2d 1351, 1352 (9th Cir. 1991). District courts in the Ninth Circuit have "regularly found" injunctive relief warranted with respect to the PACA trust, and "routinely conclude that the <u>prospect</u> of statutory trust assets being depleted constitutes irreparable injury." *CP Produce, LLC v. Quality Fresh Farms, Inc.*, No. 1:18-cv-00077-DAD-EPG, 2018 U.S. Dist. LEXIS 9093, at *6 (E.D. Cal. Jan. 19, 2018)(collecting cases)(emphasis added).

A preliminary injunction is warranted because Melon Corp.—a PACA licensee— sold fresh fruits and vegetables (hereafter "*Produce*") to its customers— each a PACA licensee— which are subject to PACA's trust provisions. Melon Corp., at all times and with all accounts relevant hereto, properly perfected its PACA trust rights with respect to Produce it sold, making Melon Corp. a PACA trust beneficiary, and rendering its customers as the PACA trustees (hereafter, these customers are the "*Customers/PACA Trustees*"). Silo improperly interfered with the lawful operation of the PACA trusts by demanding the Customers/PACA Trustees divert and deliver the PACA trust assets to Silo. Per the Customers/PACA Trustees, these PACA assets would be delivered to Melon Corp. as a PACA trust beneficiary ***but for*** Silo's improper demands and threats of legal consequences. Silo's improper threats and demands to the Customers/PACA Trustees constitute interference with the PACA trust assets and have caused the Customers/PACA Trustees to withhold and dissipate the PACA trust assets with respect to Melon Corp.'s beneficial interest. As a direct result of Silo's actions, Melon Corp has suffered immediate and continuing

financial harm, Melon Corp. has been prevented from paying its own PACA trust beneficiary creditors, and Melon Corp.'s liquidity and continued operations are in serious jeopardy. Silo's improper interference with the lawful or proper operation of the PACA trust has created upstream consequences, because Melon Corp. is not only a PACA trust beneficiary, but it is also a PACA trustee with respect to Produce it has purchased from other third-parties like Fordel Marketing, LLC, which has sought leave to intervene and bring claims against Melon Corp. and Silo in this action. [*See* Motion to Intervene, ECF 37]. Silo's improper and legally unsupportable demands and interference with PACA trust assets have thus disrupted and dissipated the flow of PACA trust assets or benefits for multiple PACA beneficiaries.

Therefore, Melon Corp. respectfully seeks an order of Court (1) confirming that Melon Corp. is a properly perfected PACA trust beneficiary with respect to the PACA Trust Funds, (2) requiring Silo to cease and desist its interference with the lawful operation of the PACA trust, including but not limited to any further or continued attempts to collect the PACA Trust Funds from the Customers/PACA Trustees, and (3) pursuant to Fed. R. Civ. Pro. 65(d)(2)(C), instructing the Customers/PACA Trustees to perform their PACA duties in the normal course of business.

Dated: March 7, 2025

/s/ *Jason R. Klinowski*

Jason R. Klinowski, Esq.
(admitted *Pro Hac Vice*)
KLINOWSKI DAMIANO LLP
*Attorney for Plaintiff Melon Corp.*

## Table of Contents

NOTICE OF MOTION ..................................................................................................1
TABLE OF CONTENTS ..............................................................................................4
TABLE OF AUTHORITIES ........................................................................................5
MEMORANDUM OF POINTS AND AUTHORITIES .............................................7

    I. INTRODUCTION AND NATURE OF THE CASE ..........................................7
    II. STATEMENT OF THE FACTS .........................................................................9
        a. Facts Demonstrating Plaintiff is a Properly Perfected PACA Trust Beneficiary .......9
        b. Facts Demonstrating Melon Corp. is also a PACA Trustee .....................................10
        c. Defendant Silo's Disruption and Dissipation of PACA Trusts..................................11
        d. Immediate Harm and Disruption to PACA Trusts....................................................13
    III. LEGAL STANDARD .......................................................................................15
        a.   Rule 65 Authorizes Preliminary Injunction ...........................................................15
        b.   PACA's Legislative and Judicial History Support Injunctive Relief ....................15
        c.   This Court has Proper Jurisdiction to Enter Injunctive Relief under PACA ..........18
    IV. ARGUMENT ....................................................................................................19
        a.   Likelihood of Success on the Merits......................................................................21
        b.   Irreparable Injury ...................................................................................................23
        c.   Balancing of Harms ...............................................................................................24
        d.   Public Interest ........................................................................................................25

CONCLUSION ............................................................................................................28

## **Table of Authorities**

### Cases

*Allens, Inc. v. D&E Farms, Inc. (In re Veg Liquidation, Inc.)*, 516 B.R. 545, 554 (Bankr. W.D. Ark. 2014)...................................................................................................................23

*Allens, Inc. v. H.C. Schmieding Produce Co., Inc. (In re Veg Liquidation, Inc.)*, 516 B.R. 555, 559 (Bankr. W.D. Ark. 2014) ........................................................................................22

*Baiardi Food Chain v. United States*, 482 F.3d 238, 241 (3d Cir. 2007)...................................27

*Chidsey v. Geurin*, 443 F.2d 584, 588-89 (6th Cir. 1971) ..........................................................27

*CP Produce, LLC v. Quality Fresh Farms, Inc.*, No. 1:18-cv-00077-DAD-EPG, 2018 U.S. Dist. LEXIS 9093, at *6 (E.D. Cal. Jan. 19, 2018) .............................................................2, 19, 24

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373, 120 S. Ct. 2288, 147 L. Ed. 2d 352 (2000).................................................................................................................................23

*Debruyn Produce  v. Olympia Produce*, 734 F. Supp. 483 (N.D. Ga. 1989) .............................20

*Endico Potatoes, Inc. v. CIT Group Factoring, Inc.*, 67 F.3d 1063, 1069 (2nd Cir. 1995).........19

*F.T. Produce, Inc. v. Agwa, Inc.*, 2011 U.S. Dist. LEXIS 6013, 2011 WL 677259, at *3 (S.D. Cal. Jan. 21, 2011) ..............................................................................................................24

*Farley and Calfee, Inc. v. U.S. Dept. of Agric.*, 941 F.2d 964, 966 (9th Cir. 1991)...................16

*Finer Foods Sales Co. v. Block,* 228 U.S. App. D.C. 205, 708 F.2d 774, 782 (1983) ..........27, 28

*Fresh & Best Produce, Inc. v. Oaktown Ventures, LLC*, No. 16-cv-06991-BLF, 2017 U.S. Dist. LEXIS 109899, at *7-8 (N.D. Cal. July 14, 2017)...............................................................16

*Freshpoint Denver, Inc. v. Trinity Fresh Distribution, LLC*, 2019 U.S. Dist. LEXIS 7326, 2019 WL 201519, at *2 (E.D. Cal. Jan. 15, 2019) ......................................................................24

*Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 159 (11th Cir. 1990) ........................17, 18, 20, 24

*Golden W. Veg, Inc. v. Bartley*, No. 16-CV-03718-LHK, 2017 U.S. Dist. LEXIS 82429, 2017 WL 2335602, at *5 (N.D. Cal. May 30, 2017)....................................................................16

*Goldman-Hayden Co., Inc. v. Fresh Source Produce Inc.*, 217 F.3d 348, 351 (5th Cir. 2000)..16

*GreenGate Fresh, LLLP v. Trinity Fresh Procurement, LLC*, 2019 U.S. Dist. LEXIS 7325, 2019 WL 201527, at *2 (E.D. Cal. Jan. 15, 2019) ......................................................................24

*In re Bear Kodiak Produce, Inc.*, 283 B.R. 577, 582 (Bankr. D. Ariz. 2002) ...........................18

*In re Kornblum & Co*, 81 F.3d 280, 284 (2d Cir. 1996)..............................................................18

*In re Milton Poulos, Inc.*, 947 F.2d 1351, 1352 (9th Cir. 1991)...................................................2

*In re San Joaquin Food Serv., Inc.*, 958 F.2d 938, 939 (9th Cir. 1992) ......................................2

*In re: The Caito Produce Co.*, 48 Agric. Dec. 602, 622 (U.S.D.A. 1989) ................................28

*Kleiman & Hochberg, Inc. v. U.S. Dep't of Agric.*, 497 F.3d 681, 690 (D. D.C. 2007).............28

*Marvin Tragash Co., Inc. v. U.S. Dep't of Agric.*, 524 F.2d 1255, 1257 (5th Cir. 1975)...........27

*Middle Mt. Land & Produce, Inc. v. Sound Commodities, Inc.*, 307 F.3d 1220, 1224 (9th Cir. 2002)..................................................................................................................................17

*Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 348 (S.D.N.Y. 1993);...........18

*Nickey Gregory Co., LLC v. AgriCap, LLC*, 2011 U.S. Dist. LEXIS 50221, at *5 (N.D. Cal. May 9, 2011)....................................................................................................................19

*Perfectly Fresh Farms, Inc. v. U.S. Dep't of Agric.*, 692 F.3d 960, 964 (9th Cir. 2012) ...........26

*Pinson v. Apker*, No. CV 13-02059-TUC-DCB, 2018 U.S. Dist. LEXIS 242317, at *9 (D. Ariz. May 24, 2018)......................................................................................................................20

*Produce Exch., Inc. v. Volcano Produce, Inc.*, No. CV 23-9802-DMG (ASx), 2023 U.S. Dist. LEXIS 245643, at *2 (C.D. Cal. Nov. 20, 2023) ........................................................21

*Produce Pay, Inc. v. Izguerra Produce, Inc.*, 39 F.4th 1158, 1162 (9th Cir. 2022) ..................19

*Red's Mkt. v. Cape Canaveral Cruise Line*, 181 F.Supp.2d 1339, 1344 (M.D. Fla. 2002).........17

*S & H Packing & Sales Co. v. Tanimura Distrib., Inc.*, 883 F.3d 797, 811 (9th Cir. 2018) 17, 19, 21, 22

*Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95, 103 S. Ct. 2890, 77 L. Ed. 2d 490 (1983).........23

*Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280 (9th Cir. 1997)...................................................18

*Sysco Food Services of Seattle, Inc. v. Country Harvest Buffet Restaurants*, Inc., 245 B.R. 650, 652 (9th Cir. BAP 2000).............................................................................................................18

*Tanimura & Antle, Inc. v. Packed Fresh Produce*, 222 F.3d 132, 140 (3rd Cir. 2009) ........24, 26

*Taylor Farms Fla. v. Gennaro's Produce*, No. 07-60259-CIV, 2007 WL 646987, at *2 (S.D. Fla. Feb. 27, 2007)......................................................................................................................20

*Toca v. Tutco*, LLC, 430 F. Supp. 3d 1313, 1326 (S.D. Fla. 2020)............................................23

*Veg Ex, LLC v. W. Cent. Produce, Inc.*, No. 2:22-cv-01587-MEMF-JCx, 2023 U.S. Dist. LEXIS 99544, at *5 (C.D. Cal. June 6, 2023) ...........................................................................19

*W. Veg-Produce, Inc. v. Lexy Grp.*, No. 2:18-cv-00180-ODW (AGRx), 2018 U.S. Dist. LEXIS 63863, at *13 (C.D. Cal. Apr. 16, 2018) ......................................................................22

*Winter v. NRDC, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008) ...............15, 21

Statutes

7 C.F.R. § 46.46 ...........................................................................................................................17

7 U.S.C. §499a-t...................................................................................................1, 2, Passim

7 U.S.C. § 499e(c).........................................................................................................................11

7 U.S.C. § 499e(c)(2).....................................................................................................................14

7 U.S.C. § 499e(c)(4).....................................................................................................................14

7 U.S.C. 499(b)...............................................................................................................................8

7 U.S.C. 499(e) ...............................................................................................................................2

Packers and Stockyards Act, 1921, *as amended*, 7 U.S.C. §§ 181-229 ("*PASA*") .....................29

UCC § 9-406..................................................................................................................................13

Other Authorities

83 Fed. Reg. 5,175 (February 6, 2018) (to be codified at 7 C.F.R. Part 46) .............................19

Rules

Federal Rule of Civil Procedure 65 ...................................................................................1, 15, 20

## MEMORANDUM OF POINTS AND AUTHORITIES

I.    **Introduction and Nature of the Case**

In this suit, Melon Corp. seeks to enforce its rights under the PACA's Unfair Conduct and Trust provisions, 7 U.S.C. 499(b)&(e), against Defendants Silo and Andrew Braun, and to further enforce its rights under state law. This Motion concerns Melon Corp.'s lawful rights to receive PACA trust assets held and possessed by sixteen (16) of its customers/PACA trustees, who are identified as the "*Customers/PACA Trustees*." The aggregate amount of these funds owing to Melon Corp. is more than $1,487,281.81, which includes interest (hereafter the "*PACA Trust Funds*"). The immediate release of the PACA Trust Funds is necessary and urgently required for the continued business operations of Melon Corp., as well as for Melon Corp.'s ability to perform its own obligations under federal law as a PACA trustee to other PACA trust beneficiaries (i.e., unpaid suppliers of Produce to Melon Corp., such as Intervenor Fordel Marketing). However, these PACA Trust Funds are being withheld from Melon Corp. by the Customers/PACA Trustees based **<u>solely</u>** upon the improper and unlawful interference with the lawful and intended operation of the PACA trusts committed by Silo. Specifically, Silo has improperly threatened the Customers/PACA Trustees with legal action based upon Silo's alleged status as a secured creditor of Melon Corp., as evidenced by Silo's UCC filings. Critical to understanding why injunctive relief is proper and necessary, is that Silo's status as a UCC-1 secured creditor can never, as a matter of law, create priority over the rights of a properly perfected PACA trust beneficiary, and PACA trust assets are not general corporate assets which can be used to satisfy other corporate debts. Simply put, Silo has no legal right to Melon Corp.'s PACA Trust Funds.

Silo stated in demand letters sent by Silo's attorneys to each of Melon Corp.'s Customers/PACA Trustees that Silo has priority over and constructive rights to the PACA Trust

PLAINTIFF'S NOTICE OF MOTION AND
MOTION FOR PRELIMINARY INJUNCTION - 7

Funds. According to Silo, if the Customers/PACA Trustees do not deliver these funds to Silo, they will violate the law and face legal consequences. As illustrated in the concurrently filed Declaration of Gurdeep Billan, ***but for*** Silo's improper and unlawful threats to the Customers/PACA Trustees, these Customers/PACA Trustees would have disbursed the PACA Trust Funds due and owing to Melon Corp., as PACA trust beneficiary, in the normal course of business. Aware of this lawsuit and fearful of double liability, the Customers/PACA Trustees have told both Melon Corp. and Silo they will not disburse the funds until Melon Corp. and Silo jointly provide instructions, or the Court instructs them. Melon Corp. has asked Silo to consent to the funds being disbursed to Melon Corp., and to jointly instruct the Customers/PACA Trustees how to proceed, but Silo refused and continues to refuse.

Herein, Melon Corp. will demonstrate that preliminary injunctive relief is proper because (i) Melon Corp. is likely to succeed on the merits that it is a properly perfected PACA trust beneficiary and the proper recipient of the PACA Trust Funds, (ii) Melon Corp. will be irreparably injured without the Court's intervention, (iii) there is no balance of hardships, as Silo has no legal right to the PACA Trust Funds and will not be financially injured or impaired by this Court's injunction, and (iv) the public interest is served by protecting and enforcing PACA trust rights, which exist to protect farmers, growers, and America's food supply.

II.    **STATEMENT OF FACT**

a.    Facts Demonstrating Plaintiff is a Properly Perfected PACA Trust Beneficiary

1.    Melon Corp. was at all relevant times and is a USDA licensed dealer of Produce (i.e., holder of PACA License No. 20220765) and a properly perfected PACA trust beneficiary in that Melon Corp. fully complies with all of PACA statutory mandates necessary to perfect its rights as a PACA trust beneficiary. *See Decl. of Gurdeep Billan*, ¶2, 3, 7, 9-21, and Ex.s A&B.

2.      The Customers/PACA Trustees were at all relevant times and are each a licensed "dealer" of Produce under PACA. *Id.*, ¶4.

3.      The Customers/PACA Trustees are: Aldays Produce Inc.; Arizona Sky Produce Inc.; Costco Wholesale Corporation; Del Monte Fresh Produce (Texas) Inc.; Fordel Marketing LLC; Imok Global LLC; The Kroger Co.; The Midwest's Best Produce Company t/a Midwest Best Produce; Mosby Brothers Farms Inc.; Mr. Felix Produce Sales LLC; JA Pacific Sales Company Inc.; Palmisano Brothers Produce Co., Inc. T/A Peddler's Son Produce; Smart & Final Stores LLC; The Ichiban Companies Inc.; Tom Lange Company, Inc.; and Walmart Inc. *Id.*

4.      Each of Melon Corp.'s Customers/PACA Trustees are also engaged in the business of either buying and selling Produce in wholesale/jobbing quantities, or selling Produce at retail, and, therefore, each a "dealer" under PACA. *Id.*, ¶6

5.      Defendant Silo was at all relevant times and is a PACA licensee. *Id.*, ¶ 8.

6.      With respect to Melon Corp.'s status as a properly-perfected PACA beneficiary, Melon Corp. sold Produce to each of the Customers/PACA Trustees, and the Customers/PACA Trustees bought said Produce from Melon Corp. *Id.*, Ex. A. Thus, the Customers/PACA Trustees' Produce transactions with Melon Corp. involved "covered commodities" under PACA. *Id.*, ¶ 9. Moreover, each Customer/PACA Trustee acknowledged their timely receipt of the Produce in writing. *Id.*, ¶ 20.

7.      Additionally, the transactions between Melon Corp. and each of the Customers/PACA Trustees gave rise to Melon Corp.'s properly perfected status as a PACA beneficiary because: (i) Melon Corp. timely invoiced each Customer/PACA Beneficiary for each covered transaction, *Id.*, ¶¶12-3, 16; (ii) each invoice issued by Melon Corp. required payment in less than 30 days under PACA from the date the Customers/PACA Trustees received and accepted

each shipment of Produce, *Id.*, ¶11-12; (iii) Melon Corp.'s unpaid invoices issued to each of the Customers/PACA Trustees contained language preserving its beneficial interests in and to the Customers/PACA Trustees' PACA trust assets, *Id.*, ¶ 16; (iv) all invoices were electronically issued by Melon Corp. to the Customers/PACA Trustees, *Id.*, ¶17 and Ex. A; and (v) the Produce transactions were all wholesale/jobbing quantities made in interstate commerce, *Id.*, ¶6-7.

8.      As a properly perfected PACA beneficiary, all the proceeds or cash due to Melon Corp. in connection with Melon Corp.'s sale of Produce to the Customers/PACA Trustees is held in trust by the Customers/PACA Trustees for the exclusive benefit of Melon Corp. as an unpaid supplier of said Produce. *Id.,* ¶19. Thus, the Customers/PACA Trustees owe and must deliver the PACA Trust Funds to Melon Corp. by virtue of the operation of the PACA Trust. *Id.*

       b.      <u>Facts Demonstrating Melon Corp. is also a PACA Trustee</u>

9.      Melon Corp. is a corporate trustee of the PACA trust with respect to the Produce it receives from its suppliers and a beneficiary of the PACA trust with respect to Produce it sells to its customers. Thus, all the proceeds or cash due to Melon Corp. for its sale of Produce to its customers is held in trust by Melon Corp. for the exclusive benefit of Melon Corp.'s unpaid Produce suppliers. *Id.*, ¶45-6.

10.     Melon Corp. is the corporate trustee of its PACA Trust Assets because: (i) it is the holder of a license to buy and sell Produce, which the USDA issued to Melon Corp. and which makes it a dealer of Produce under PACA; (ii) it is engaged in the business of buying and selling wholesale quantities of Produce in interstate commerce, and; (iii) is legally obligated to comply with PACA's trust and unfair conduct provisions (e.g., a duty to maintain its PACA Trust Assets in a manner that insures they are both sufficient in amount and freely available to

PLAINTIFF'S NOTICE OF MOTION AND
MOTION FOR PRELIMINARY INJUNCTION - 10

make full payment promptly to its PACA trust beneficiaries, a duty to preserve PACA Trust Assets, a duty not to dissipate PACA Trust Assets, etc.). *Id.*

11.    Melon Corp.'s PACA Trust Assets include, without limitation: (i) its Produce related accounts receivable; (ii) proceeds from sale of Produce; (iii) cash; (iv) assets commingled with the proceeds of Melon Corp.'s sale of Produce, and; (iv) other assets acquired or maintained with such proceeds, cash, assets, or other trust assets held in Melon Corp.'s name or for the benefit of Melon Corp. (the "*PACA Trust Assets*"). *See* 7 U.S.C. § 499e(c).

c.    Defendant Silo's Disruption of PACA Trusts and Dissipation of PACA Assets

12.    Defendant Silo contacted the Customers/PACA Trustees and directed them through letters sent by their attorney (the "*Improper Demand Letters*"), under the threat of legal consequence, to forward, transfer, or otherwise pay all proceeds from Melon Corp.'s sale of Produce (i.e., PACA Trust Assets) to Silo and not Melon Corp.  *Id.*, ¶ 22, 29-30.

13.    Silo knew or should have known that these funds were impressed with the PACA Trust by virtue of Silo's knowledge of PACA (as a PACA licensee) and its access to and control over Melon Corp.'s accounts receivable and invoices. *Id.*, ¶ 23.

14.    Silo's communication and outreach to Melon Corp.'s Customers/PACA Trustees has resulted in all Customers/PACA Trustees refusing to make payment for Melon Corp.'s Produce related invoices for not less than $1,487,281.10, inclusive of interest, all of which qualify as PACA Trust Assets. 7 C.F.R. § 46.2(aa); 7 U.S.C. § 499b(4); *Id.*, ¶24-30, Ex. C.

15.    Silo breached its duties under PACA and interfered with and dissipated the PACA Trust Funds by, *inter alia*, threatening the Customers/PACA Trustees and directing them – under the threat of legal consequence – to forward, transfer, or otherwise pay all proceeds from Melon Corp.'s sale of Produce to Silo (i.e., PACA Trust Funds). *Id.*, ¶22.

PLAINTIFF'S NOTICE OF MOTION AND
MOTION FOR PRELIMINARY INJUNCTION - 11

16.     Silo     justified     its     wrongful/unlawful     threats     and     instructions     to     the
Customers/PACA Trustees by its alleged security interests in, and UCC filing on, Melon Corp.'s
accounts receivable. Silo improperly threatened legal consequences based on a security interest
that does not prime federally protected PACA trust rights, thereby unlawfully interfering with
the operation of PACA. *Id.*, ¶ 22, 26, 30.

17.     Specifically, on or about July 30, 2024, Silo, through its attorney, sent the
Improper Demand Letters to the Customers/PACA Trustees. *Id.*, ¶ 29-30, <u>Ex.</u> <u>C</u>.

18.     In the Improper Demand Letters, Silo improperly claimed (i) "Melon defaulted
on its obligations to Silo" and "is indebted to Silo;" (ii) "Under UCC § 9-406… You [the
Customer/PACA Trustee] may only satisfy the debt that You owe Melon by paying Silo;" (iii)
"You are hereby notified to immediately pay all monies in your possession currently due and
owing to Melon and all sums in your possession that would be payable to Melon to Silo;" (iv)
and "Your failure to remit to Silo all sums…will constitute a violation of the UCC and
interference with [contract]." *Id.*, 29-30, 35.

19.     In short, Silo contends that, unless the Customers/PACA Trustees pay Silo the
PACA Trust Funds, then the Customers/PACA Trustees have violated the UCC and committed
a tort (e.g., intentional interference with contract). The foregoing constitutes an improper, false
threat by Silo which has <u>directly</u> caused interference with the lawful operation of the PACA
trusts, dissipation of PACA Trust Assets, PACA violations, and directly and proximately injured
Melon Corp. *Id.*

20.     In response to Silo's Improper Demand Letters, Melon Corp. wrote to the
Customers/PACA Trustees and stated that Melon Corp. is a properly perfected PACA
beneficiary, the funds owing on the unpaid Produce invoices are PACA Trust assets, and that the

Customers/PACA Trustees have an obligation under PACA to pay Melon Corp. that primes any claim Silo might have by virtue of its security interest, contract, or the UCC. *Id.*, 33 and <u>Ex</u>. <u>D</u>.

21.    Despite the time-sensitive nature of the Produce contracts, nonetheless Melon Corp. allowed the Customers/PACA Trustees an opportunity to cure the violations. *Id.*, ¶ 39.

22.    Each of the Customers/PACA Trustees communicated to Melon Corp. that they were faced with a dilemma, and asked for joint instruction from Melon Corp. and Silo together, or for Court issued instruction. *Id.*, ¶ 37, 47.

23.    For instance, Costco Wholesale wrote that "Costco is not in a position to adjudicate the merits" of the dispute between Silo and Melon Corp., and asking both companies to "jointly direct Costco to whom to remit the funds." *Id.*, 37, <u>Ex</u>. <u>E</u>.

24.    Similarly, Tom Lange Co. wrote, "[w]e have received your letter and it seems we are caught in the middle of a disputed lien. I am sure you can understand our position of having no interest in taking on unnecessary legal liability due to your dispute with Silo. As such, we will not be remitting payment to anyone until we receive a Court Order or a resolution between Melon Corp and Silo that eliminates our risk of paying the wrong party and having to double pay on these files…. In the meantime, we will simply hold these payables until legal direction is given." *Id*.

d.    <u>Immediate Harm and Disruption to PACA Trusts</u>

25.    Silo's issuance of its Improper Demand Letters thus caused the Customers/PACA Trustees to refuse to pay not less than $1,487,281.10, and the Customers/PACA Trustees continue to withhold the PACA Trust Funds from Melon Corp. *Id.*, ¶ 35-6.

26.    Silo's improper interference with Melon Corp.'s PACA trust rights has deprived Melon Corp. of $1,487,281.81, has caused dissipation of the PACA trusts, caused immediate

and irreparable financial damage to Melon Corp., has caused Melon Corp.'s good will and customer relations to be irreparably injured, and has caused injury to many of Melon Corp.'s Produce suppliers/PACA trust beneficiaries (e.g., a cascade of PACA violations). It threatens Melon Corp.'s ability to operate in compliance with PACA, to operate its business and melon farming operation, and to remain liquid and solvent. It threatens the system of timely and secured payments to farmers and growers, such as Melon Corp. herein, which PACA was designed by Congress to protect. *Id.*, ¶ 43-49; 56.

27.    Specifically, Silo's interference with the lawful operation of the PACA Trusts and Melon Corp.'s beneficial interest in and to the PACA Trust Funds has forced Melon Corp. and its principals to deplete their assets, terminate employees, and otherwise significantly downsize its operations in order to survive. *Id.*, ¶ 50.

28.    Silo's improper interference with the lawful operation of the PACA trusts and the PACA Trust Funds owing to Melon Corp. risks PACA Trust Asset depletion, dissipation, and loss, which risks cascading and snowballing defaults in the Produce industry. *Id.*, ¶ 51-54.

29.    Despite the injuries Silo has caused, Melon Corp. tried to work with Silo to achieve the private release of the PACA Trust Funds from the Customers/PACA Trustees, even offering Silo a settlement of certain of Melon Corp.'s claims to achieve the result. Silo refused. *Id.*, ¶ 42.

30.    Only this Court's grant of injunctive relief can prevent the dissipation of the PACA Trust Funds, the ensuing financial ruin of Melon Corp., and substantial injury to all of Melon Corp.'s PACA trust beneficiaries. Without Court intervention, Melon Corp. will be unable to pay its PACA trust beneficiaries and this may, in turn, cause a cascading effect of non-

1  payment to other unpaid Produce sellers in the supply chain (e.g., Fordel Marketing), which

2  PACA was specifically intended by Congress to prevent. *Id.*, ¶ 52-54.

3  ### III.    LEGAL STANDARD

4  #### a.  Rule 65 Authorizes Preliminary Injunction

5  Under Federal Rule of Civil Procedure 65, a "plaintiff seeking a preliminary injunction

6  must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable

7  harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that

8  an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172

9  L. Ed. 2d 249 (2008). Rule 65 provides that the Court may bind with a preliminary injunction

10 "the parties" to the litigation and any "other persons who are in active concert or participation

11 with anyone described in Rule 65(d)(2)(A) or (B)." F.R.C.P. 65(d)(2). As a party, Defendant Silo

12 is plainly subject to this Court's injunctive power. Given their participation in the PACA violation,

13 the Customers/PACA Trustees are exactly the type of non-party encompassed by F.R.C.P.

14 65(d)(2), because they, in participation-through-duress with Silo, together violated Melon Corp.'s

15 PACA trust rights. *See cPanel, Ltd. Liab. Co. v. Asli*, 719 F. Supp. 3d 1133, 1154 (D. Or.

16 2024)(Rule 65(d)(2)(C) is derived from the common law doctrine that a decree of injunction not

17 only binds the party defendant but also those in interest, in association, or under defendant's

18 control).

19 #### b.  PACA's Legislative and Judicial History Support Injunction.

20 Congress enacted PACA in 1930 in order to "prevent[] unfair business practices and

21 promot[e] financial responsibility in the fresh fruit and produce industry." *Farley and Calfee, Inc.

22 v. U.S. Dept. of Agric.*, 941 F.2d 964, 966 (9th Cir. 1991).  "PACA protects sellers of perishable

23 agricultural goods by requiring a merchant, dealer, or retailer of perishable produce to hold in

trust proceeds from the sale of the perishable produce, and food derived from that produce, for the benefit of all unpaid suppliers." *Fresh & Best Produce, Inc. v. Oaktown Ventures, LLC*, No. 16-cv-06991-BLF, 2017 U.S. Dist. LEXIS 109899, at *7-8 (N.D. Cal. July 14, 2017). PACA was enacted "to protect the producers of perishable agricultural products, most of whom must entrust their products to a buyer who may be thousands of miles away, and depend for their payment upon his business acumen and fair dealing." *Goldman-Hayden Co., Inc. v. Fresh Source Produce Inc.*, 217 F.3d 348, 351 (5th Cir. 2000) (internal citations omitted).

PACA's primary protection mechanism is its trust provision: "Congress in 1984 broadened the scope of PACA to protect unpaid perishable agricultural commodities suppliers and sellers…The amendment impresses a trust on the perishable agricultural commodities received by the purchaser, all inventories of food or other products derived therefrom, and receivables or proceeds from the sale of such commodities and products. The trust automatically arises in favor of a perishable agricultural commodities seller upon delivery of perishable agricultural commodities…until full payment of the sums owing in connection with the transaction have been received." *Middle Mt. Land & Produce, Inc. v. Sound Commodities, Inc.*, 307 F.3d 1220, 1224 (9th Cir. 2002) (internal citations omitted).

A PACA trustee is charged with preserving the rights of trust beneficiaries "by making sure that PACA trust assets—the accounts receivable—are not dissipated." *S & H Packing & Sales Co. v. Tanimura Distrib., Inc.*, 883 F.3d 797, 811 (9th Cir. 2018). "The duty to maintain trust assets is far-reaching. Federal regulation dictates that '[a]ny act or omission which is inconsistent with this responsibility, including dissipation of trust assets, is unlawful and in violation of [PACA].'" *Id*. at 803 (quoting 7 C.F.R. § 46.46(d)(1)). PACA regulations define "dissipation" as "any act or failure to act which could result in the diversion of trust assets or

PLAINTIFF'S NOTICE OF MOTION AND
MOTION FOR PRELIMINARY INJUNCTION - 16

which could prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed in connection with produce transactions." 7 C.F.R. § 46.46(a)(2).

The PACA trust commences by operation of law upon receipt of the Produce and continues until full payment for the Produce has been made. 7 U.S.C. § 499e(c)(2); 7 C.F.R. § 46.46(d)(1). Once the supplier delivers the Produce, the failure of the buyer (as trustee) to pay the trust beneficiaries is unlawful. 7 U.S.C. § 499b(4); *Frio Ice, S.A. v. Sunfruit, Inc.,* 918 F.2d 154, 159 (11th Cir. 1990). A breach of fiduciary duty, for example, exists when the proceeds from the sale of Produce are used for even legitimate business expenditures, such as the payment of rent, payroll, or utilities. *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280 (9th Cir. 1997).

The primary benefit of the trust for a Produce supplier is that when a buyer or consignee fails to pay or becomes insolvent, the supplier is placed first in line among creditors to receive the trust *res,* which consists of all assets of the PACA Trustee unless and until it proves a particular asset was acquired with something other than the proceeds of the Trustee's dealings in Produce. *Frio Ice, S.A*, 918 F.2d at 156. The PACA trust *res* serves as a fund from which unpaid Produce suppliers can be assured payment. By operation of trust law, while a buyer or consignee of Produce has legal title to the PACA trust *res*, equitable title remains with the supplier of the Produce. *In re Kornblum & Co,* 81 F.3d 280, 284 (2d Cir. 1996). In the instant action, Melon Corp. possesses equitable title to the PACA Trust Funds.

Third-parties, such as ostensibly secured lenders like Silo in this action, are precluded from interfering with, taking, converting, dissipating, or retaining assets impressed with the PACA Trust, because PACA trust beneficiaries "are granted statutory priority in repayment, even senior to secured creditors." *Sysco Food Services of Seattle, Inc. v. Country Harvest Buffet Restaurants*, Inc., 245 B.R. 650, 652 (9th Cir. BAP 2000). Third-parties who collect or otherwise

receive PACA trust assets, including receivables or assets acquired with the proceeds from sales of produce, must disgorge those assets to the extent necessary to satisfy claims of PACA trust beneficiaries. *Endico Potatoes, Inc. v. CIT Group Factoring, Inc.*, 67 F.3d 1063, 1069 (2nd Cir. 1995). In *Nickey Gregory Co., LLC v. AgriCap, LLC*, 2011 U.S. Dist. LEXIS 50221, at *5 (N.D. Cal. May 9, 2011), this District held that a lender's "security interests do not trump the claims of PACA trust creditors." *Id. See also Produce Pay, Inc. v. Izguerra Produce, Inc.*, 39 F.4th 1158, 1162 (9th Cir. 2022)("While PACA protects the interests of suppliers and sellers of produce, it does not protect the interests of parties who are only lenders"); *S & H Packing & Sales Co. v. Tanimura Distrib.*, 883 F.3d 797, 802 (9th Cir. 2018)(If the third-party is not engaged in true sale, but rather has made a loan, "the court's inquiry stops there and the assets remain in the [PACA] trust."); *Veg Ex, LLC v. W. Cent. Produce, Inc.*, No. 2:22-cv-01587-MEMF-JCx, 2023 U.S. Dist. LEXIS 99544, at *5 (C.D. Cal. June 6, 2023)(The purpose of the trust amendment to PACA is that "Congress was concerned by "the common practice of produce buyers granting liens on their inventories to their lenders" which "elevated the lenders to a secured creditor position in the case of the buyer's insolvency, while the sellers of perishable agricultural commodities remained unsecured creditors.""), quoting 83 Fed. Reg. 5,175 (February 6, 2018) (to be codified at 7 C.F.R. Part 46).

      c.   The Court has Proper Jurisdiction to Enter Injunctive Relief pursuant to PACA.

      The caselaw cited in the prior section demonstrates why injunctive relief is proper in a PACA context (i.e., the purposes that PACA aims to achieve), and District courts in the Ninth Circuit have "regularly found" injunctive relief warranted in the PACA context, and "routinely conclude that the prospect of statutory trust assets being depleted constitutes irreparable injury." *CP Produce*, at *6 (collecting cases). Injunctive relief is necessary and proper under PACA to

prevent interference with PACA Trust rights and the dissipation of a supplier's interest in PACA trust assets, and the District Courts have jurisdiction to entertain injunctive actions by both the USDA and private unpaid Produce suppliers with respect to such PACA trust rights. *Frio Ice, S.A.,* 918 F.2d at 158-60; *See also Debruyn Produce v. Olympia Produce*, 734 F. Supp. 483 (N.D. Ga. 1989) ("Injunctive relief is necessary to preserve the status quo for the protection of the produce [suppliers]"); *J.R. Brooks & Sons v. Norman's Country Mkt.*, 98 B.R. 47 (Bankr. N.D. Fla. 1989) (same); 7 U.S.C. § 499e(c)(4). Preventing the disruption of the PACA trust is a key purpose of PACA. *Frio Ice, S.A.*, 918 F.2d at 159.  Moreover, managing the transfer of PACA trust assets often may be the only means by which a Federal Court can prevent dissipation of the PACA trust. *Id.* Upon a showing that PACA trust rights are threatened, a District Court should require the performance and maintenance of PACA trust obligations.  *See Frio Ice*, 918 F.2d at 159.  *See also Taylor Farms Fla. v. Gennaro's Produce*, No. 07-60259-CIV, 2007 WL 646987, at *2 (S.D. Fla. Feb. 27, 2007) (wherein injunctive relief without notice was granted to the PACA trust beneficiary to preclude the defendants' continued dissipation of the trust *res* and to maintain the status quo). Moreover, with respect to the Customers/PACA Trustees, where a non-party has acted in "conjunction" with a party to cause the harm sought to be redressed, injunctive relief as to a non-party is proper. *Pinson v. Apker*, No. CV 13-02059-TUC-DCB, 2018 U.S. Dist. LEXIS 242317, at *9 (D. Ariz. May 24, 2018).

## IV.   **ARGUMENT**

Injunctive relief is particularly appropriate where the PACA trust is disrupted or the *res* of the PACA trust is threatened with dissipation, as PACA defines dissipation as "any act or failure to act which <u>could result in the diversion</u> of trust assets or which <u>could prejudice or impair the ability</u> of unpaid suppliers, sellers, or agents to recover money owed in connection with produce transactions." 7 C.F.R. § 46.46(a)(2) (emphasis). In the instant action, it is beyond dispute that Silo's actions could result in diversion of PACA Trust Funds (that's literally what Silo

demanded), and have in fact prevented and prejudiced Melon Corp.'s ability to recover the PACA Trust Funds, thus constituting unlawful "dissipation" under PACA. In *Frio Ice, S.A.*, 918 F.2d at 158-60, the Eleventh Circuit held that District Courts have jurisdiction to enter preliminary injunctive relief in PACA litigation matters, holding that injunctive relief is proper "[u]pon a showing that the [PACA] trust is being dissipated or threatened with dissipation…" *Frio Ice, S.A.*, 918 F.2d at 158-59.  Silo's intentional interference with the lawful operation of the PACA trusts caused dissipation of the PACA Trust Funds, which constitutes an immediate and irreparable injury to Melon Corp. Courts in this Circuit and others have consistently held as a valid basis for the entry of an immediate injunction preventing further disruption of the PACA trust's intended operation or dissipation of PACA Trust Assets when the Produce supplier is not paid. "District courts in the Ninth Circuit have regularly found TROs warranted in the PACA context, and routinely conclude that the prospect of statutory trust assets being depleted constitutes irreparable injury." *Produce Exch., Inc. v. Volcano Produce, Inc.*, No. CV 23-9802-DMG (ASx), 2023 U.S. Dist. LEXIS 245643, at *2 (C.D. Cal. Nov. 20, 2023), quoting *S & H Packing*, 883 F.3d 797, 802 (9th Cir. 2018), and collecting cases.

In deciding whether to issue a preliminary injunction under Fed. Rule 65, the Court must consider four factors: (1) likelihood to succeed on the merits; (2) irreparable harm unless the injunction issues; (3) that the potential injury outweighs possible harm to the opposing party; and (4) that the injunction is in the public interest. *Volcano Produce,* at *2. Here, Melon Corp. will demonstrate that each element is met.

### a.  Likelihood of Success of the Merits

The Billan Declaration demonstrates that Melon Corp. is the holder of a properly perfected PACA trust claim as to its Produce sales to the Customers/PACA Trustees, because Melon Corp.

preserved its PACA trust rights by, *inter alia*, including the requisite PACA trust language on the face of each invoice to the Customers/PACA Trustees, timely delivered the Produce, and was not timely paid. *Billan Declaration*, ¶ 1-21. Melon Corp. is also a PACA Trustee with respect to its acquisitions of Produce from third-party PACA sellers, such as Fordel Marketing. *Id*., ¶¶44-6. Melon Corp.'s positions as both a statutory PACA trustee and beneficiary of the PACA trust are determinable as a matter of law, and beyond dispute. Silo is a PACA licensee knowledgeable about PACA's rights and obligations with access to Melon Corp.'s books and records, including Melon Corp.'s invoices which assert its rights as a PACA beneficiary. *Id*., ¶8, 23. Thus, Silo knew its interference was unlawful and presented a high prospect of (and did in fact cause) dissipation of the PACA Trust Funds. *Id*.

Silo's Improper Demand Letters state that it is entitled to the PACA Trust Funds because of its position as a secured creditor with a UCC filing and under UCC § 9-406. *Id*., 24-31. In the absence of PACA, this assertion is not facially false. However, the case law is clear: "It is well settled that, '[a]s beneficiaries of a PACA trust, growers and sellers of perishable agricultural commodities . . . retain the 'right to recover against [PACA trustees] superior to all creditors, including secured creditors.'" *W. Veg-Produce, Inc. v. Lexy Grp.*, No. 2:18-cv-00180-ODW (AGRx), 2018 U.S. Dist. LEXIS 63863, at *13 (C.D. Cal. Apr. 16, 2018)(quotations omitted); *S & H Packing & Sales Co. v. Tanimura Distrib.*, 883 F.3d 797, 808 (9th Cir. 2018)(the PACA trust elevates "commodities sellers' interests over lenders' interest").

Because Silo's Improper Demand Letters seek to elevate its alleged rights as a secured creditor under the UCC above PACA rights, a conflict of law exists. The application of a state statute (e.g., the UCC) which conflicts with federal law (e.g., PACA) is subject to both field preemption and conflict preemption. To be clear, Silo's contention is that its position as a UCC

secured creditor must prime federally protected PACA trust rights, creating a true conflict. But courts have determined that where other statutes directly conflict with PACA, PACA preempts those statutes (e.g., field preemption). *S & H Packing*, 883 F.3d 797, 803 (9th Cir. 2018)("We apply general trust principles to questions involving PACA trusts, unless those principles directly conflict with PACA"); *Allens, Inc. v. H.C. Schmieding Produce Co., Inc. (In re Veg Liquidation, Inc.)*, 516 B.R. 555, 559 (Bankr. W.D. Ark. 2014)("As a result, because interest is an element of the PACA transaction, federal preemption applies and the Court must nullify state law to the extent it conflicts with the PACA statute"); *Allens, Inc. v. D&E Farms, Inc. (In re Veg Liquidation, Inc.)*, 516 B.R. 545, 554 (Bankr. W.D. Ark. 2014)("federal preemption applies and the Court must nullify state law to the extent it conflicts with the PACA statute" and nullifying conflicting provisions of the UCC).

Second, "the UCC is a creature of state law," *Toca v. Tutco*, LLC, 430 F. Supp. 3d 1313, 1326 (S.D. Fla. 2020), and where state law and federal law conflict, the state law is subject to preemption. Specifically, conflict preemption exists when a state law actually conflicts with federal law or when a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in enacting the federal law. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95, 103 S. Ct. 2890, 77 L. Ed. 2d 490 (1983); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373, 120 S. Ct. 2288, 147 L. Ed. 2d 352 (2000). This, of course, is exactly what Silo demanded: that the rights afforded by the UCC preempt those created by PACA. Silo's conclusion has been rejected by every Court to examine this conflict of law issue.

Moreover, in interpreting PACA's trust provisions, Courts look to the common law and restatement on Trusts as long as no express conflict exists between the two. *Boulder Fruit Exp. & Heger Organic Farm Sales v. Transportation Factoring, Inc.*, 251 F.3d 1268, 1271 (9th Cir.

2001) ("We apply general trust principles to questions involving the PACA trust, unless those principles directly conflict with PACA."). Under the common law, and as stated in the Restatement, injunctive relief is proper to ensure the proper administration of a trust and to prevent trust dissipation. *Benedict v. Amaducci*, 92 Civ. 5239 (KMW), 1993 U.S. Dist. LEXIS 3556, at *36 n.13 (S.D.N.Y. Mar. 18, 1993). Prominent authorities agree that if there is a "reasonable likelihood" that the trust will be violated, it is proper "to maintain a suit in equity to enjoin such breach…" A. Scott, 3 The Law of Trusts § 199.2, at 1639 (3rd. ed. 1967). *See also* G. Bogert, Trusts & Trustees § 543(V), at 387 (rev. 2d ed. 1978) (same); Restatement (Second) Trusts § 199(b) (same); and *Price v. Akaka,* 3 F.3d 1220, 1224 (9th Cir. 1993)(it is proper to enjoin breach and dissipation of a trust).

Therefore, regardless of Silo's alleged secured creditor status or UCC priority, the PACA Trust Funds being withheld by the PACA Trustees *solely because of Silo's Improper Demand Letters* are PACA Trust Assets which belong to Melon Corp. as a properly perfected PACA trust beneficiary. As such, Melon Corp.'s likelihood of success with respect to its status as a properly perfected PACA trust beneficiary that is entitled to an immediate distribution of the PACA Trust Funds and Silo's interference with the lawful operation of the PACA trusts and the resulting dissipation of the PACA Trust Funds, is both clear and supported by direct evidence.

b.  Irreparable Injury to Melon Corp.

In cases interpreting the rights of PACA trust beneficiaries like Melon Corp., Courts in several jurisdictions have recognized that without injunctive relief, a PACA supplier faced with uncertainty of collection is not receiving either the PACA trust assets *or* the proceeds of such trust assets. *Tanimura & Antle, Inc. v. Packed Fresh Produce*, 222 F.3d 132, 140 (3rd Cir. 2009) ("PACA trust dissipation . . . constitutes irreparable harm."); *Frio Ice, S.A.*, 918 F.2d at 159 ("The

legislative history [of the PACA] noted that once the trust is dissipated it is almost impossible for the beneficiary to obtain recovery") (emphasis added). *And see Freshpoint Denver, Inc. v. Trinity Fresh Distribution, LLC*, 2019 U.S. Dist. LEXIS 7326, 2019 WL 201519, at *2 (E.D. Cal. Jan. 15, 2019) (citing *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 140 (3d Cir. 2000)); *GreenGate Fresh, LLLP v. Trinity Fresh Procurement, LLC*, 2019 U.S. Dist. LEXIS 7325, 2019 WL 201527, at *2 (E.D. Cal. Jan. 15, 2019); *CP Produce, LLC v. Quality Fresh Farms, Inc.*, 2018 WL 1980749, at *3 (E.D. Cal. Jan. 19, 2018); *F.T. Produce, Inc. v. Agwa, Inc.*, 2011 U.S. Dist. LEXIS 6013, 2011 WL 677259, at *3 (S.D. Cal. Jan. 21, 2011).

Melon Corp.'s demonstration that the Customers/PACA Trustees refused to pay the PACA Trust Funds to Melon Corp. – under Silo's threat of legal consequence – is prima facia proof of irreparable injury and, therefore, injunctive relief is appropriate. *Frio Ice, S.A.*, 918 F.2d at 159. In this instance, Silo improperly demanded the Customers/PACA Trustees refuse to honor their obligations under federal law (i.e., PACA), while improperly threatening the Customers/PACA Trustees with legal consequences if they performed their statutory obligations. Silo is the direct and proximate cause of irreparable harm to Melon Corp. because (i) it has caused the Customers/PACA Trustees to fail to act (*See* Billan Decl., ¶¶ 35-38); (ii) it has caused financial injury to Melon Corp. and its principals, causing them to deplete their assets, terminate employees, and downsize operations in an effort to survive (*Id.,* ¶¶ 43-55); (iii) the improper acts of Silo have damaged and continues to damage Melon Corp.'s commercial relationships and goodwill with the Customers/PACA Trustees (its primary purchasing customers), and with Melon Corp.'s Produce suppliers (*Id.*); and (iv) perhaps most damaging, it has caused Melon Corp. to be unable to fully pay all of its own Produce suppliers, themselves PACA trust beneficiaries, resulting in

PLAINTIFF'S NOTICE OF MOTION AND
MOTION FOR PRELIMINARY INJUNCTION - 24

administrative actions and litigation against Melon Corp. as a PACA Trustee in breach of its own PACA obligations (*Id.*).

c.   <u>Balancing of Harms Favors Melon Corp.</u>

Silo will not be injured by the relief sought, so the balancing inquiry cuts fully in Melon Corp.'s favor. *See Bird-B-Gone, Inc. v. Bird Barrier Am., Inc.*, No. SACV 12-00178 AG (RNBx), 2013 U.S. Dist. LEXIS 191316, at *21 (C.D. Cal. Mar. 20, 2013)(where defendant has no interest in the "sales" funds at issue, balancing of harm "factor weighs in favor of Plaintiff"). Silo has no legal rights to the PACA Trust Funds, so it will not be financially injured. Melon Corp. does not seek for any funds possessed by Silo to be enjoined, or for Silo to be in any way prohibited from lawfully conducting its business. The Customers/PACA Trustees have refused to tender the PACA Trust Funds to Silo, and it has no right to receive the PACA Trust Funds. Silo has no commercial relationship with any of the Customers/PACA Trustees, so not even its goodwill or reputation could be impacted by the relief sought. Presently, the Customers/PACA Trustees are merely waiting on an Order from this Court before disbursing the PACA Trust Funds to Melon Corp. *See* Billan, ¶¶ 37-8, 52-3. Since Silo's false demands and threats to the Customers/PACA Trustees thwart the purpose of PACA, paying Melon Corp. in accord with Federal law is not injurious to Silo. Simply put, Silo cannot be harmed in any way by this Honorable Court's entry of an order directing Silo to recognize and comply with federal law (i.e., PACA).

d.   <u>Public Interest Analysis Favors Injunctive Relief</u>

1.   <u>Produce Grower/Supplier Protection</u>

The strong preference for the plight of PACA trust creditors that Congress expressed in the 1984 trust amendments to the PACA clearly illustrates the public interest at stake in this case. In the text of the statute itself, Congress expressly made this point: "This subsection is intended

to remedy such burden on commerce in perishable agricultural commodities and to protect the public interest." 7 U.S.C. § 499e(c)(1). The PACA trust safeguards were established to assure payment to Produce growers and shippers. There can scarcely be a more vital public concern than the economic security and viability of this nation's food supply.

This supply and distribution chain consists of the very same growers, producers, and distributors that Congress sought to protect when it enacted PACA in 1930 and amended it in 1984 to include the PACA trust provisions. To deny the Melon Corp. the requested relief would erode the protection Congress guaranteed to growers and suppliers of Produce in Melon Corp.'s position, bypassing PACA and the regulations promulgated thereunder, and benefitting banks and lenders like Silo over Produce providers. The preliminary injunction is in the public interest "as the statutory purpose explicitly encapsulates injunctive relief." *Tanimura*, 222 F.3d at 140.

2. Financial Stability Required by Law

Congress expressly recognized that PACA "**is admittedly and intentionally a tough law.** It was enacted in 1930 for the purpose of providing a measure of control and regulation over a branch of industry which is engaged almost exclusively in interstate commerce, which is highly competitive, and in which the opportunities for sharp practices, irresponsible business conduct, and unfair methods are numerous. The law was designed primarily for the protection of the producers of perishable agricultural products-- most of whom must entrust their products to a buyer or commission merchant who may be thousands of miles away, and depend for their payment upon his business acumen and fair dealing…" S. Rep. No. 84-2507, at 3 (1956), *as reprinted in* 1956 U.S.C.C.A.N. 3699, 3701 (emphasis added); *accord Perfectly Fresh Farms, Inc. v. U.S. Dep't of Agric.*, 692 F.3d 960, 964 (9th Cir. 2012); *see also Hawkins v. Agric. Mktg. Serv., Dept' of Agric., U.S.*, 10 F.3d 1125, 1131 (5th Cir. 1993) ("[A]ny investor in a perishable

PLAINTIFF'S NOTICE OF MOTION AND
MOTION FOR PRELIMINARY INJUNCTION - 26

commodities corporation should know at the beginning of his association with such a corporation that he is 'buying into' a corporation which is strictly regulated by the federal government through the PACA."). "While admittedly the result Congress desired could be harsh in some cases, we cannot say that [PACA] is not reasonably designed to achieve the desired Congressional purpose." *Kleiman & Hochberg, Inc. v. U.S. Dep't of Agric.*, 497 F.3d 681, 690 (D. D.C. 2007) (citation omitted). "Occasional hardship to the individual is a consideration outweighed by the public interest and the declared policy of Congress." *Callaghan v. Reconstruction Fin. Corp.*, 297 U.S. 464, 468 (1936). *And see Finer Foods Sales Co. v. Block,* 228 U.S. App. D.C. 205, 708 F.2d 774, 782 (1983) (defining PACA's goal as "that only financially responsible persons should be engaged in the businesses subject to the Act").

The reason for PACA's strict adherence standards is because "[f]ailure to pay violations not only adversely affect the party who is not paid for the produce, but **such violations have a tendency to snowball**. 'On occasions, one licensee fails to pay another licensee who is then unable to pay a third licensee.' **This could have serious repercussions to producers, licensees and consumers**." *Finer Foods Sales Co., Inc.*, 708 F.2d at 782 (citation omitted) (emphasis added). A third-party lender such as Silo has a duty to the PACA beneficiaries to not retain PACA trust assets, especially when "without obtaining new capital," they may be "subjecting many persons who [supply] produce… to the risk of financial loss." *In re: The Caito Produce Co.*, 48 Agric. Dec. 602, 622 (U.S.D.A. 1989). This is precisely what is happening here. Not only did Silo fail to provide the farm loan funding it promised Melon Corp., but now it seeks to divest Melon Corp.—which is primarily a farm—from the PACA Trust Funds needed for it to survive. A third-party creditor improperly disrupting or threatening a PACA Trustee or the operation of a PACA Trust should then be enjoined against such behavior. Given PACA's admittedly tough standards,

requiring payment without excuse and ensuring that only the financially sound remain licensees, and given the detrimental ramifications in the Produce industry where a licensee does not meet these high standards, a buyer of perishable agricultural commodities, such as the Customers/PACA Trustees in this case, which fails to abide by its PACA obligations creates substantial financial risk for all of its PACA creditors/unpaid suppliers of Produce, including Melon Corp. This risk in turn may "snowball" to others, and have a cascading effect.

In this case, Silo's actions, unlawful demands, and threats to the Customers/PACA Trustees, have directly caused a dissipation of the PACA Trust Funds due and owing to Melon Corp, which in turn has denied Melon Corp.'s ability to comply with PACA by paying its unpaid Produce suppliers. This is precisely the type of "snowball" effect Congress meant to prevent, and therefore its prevention is plainly in the public interest.

## CONCLUSION

For the foregoing reasons, Plaintiff Melon Corp. respectfully requests this Court enter a preliminary injunction against Silo: (1) confirming that Melon Corp. is a properly perfected PACA trust beneficiary with respect to the PACA Trust Funds, (2) requiring Silo to cease and desist its interference with the lawful operation of the PACA trusts, including but not limited to any further or continued attempts to collect the PACA Trust Funds from the Customers/PACA Trustees, and (3) pursuant to Fed. R. Civ. Pro. 65(d)(2)(C), instructing the Customers/PACA Trustees to perform their PACA duties in the normal course of business. Melon Corp. further respectfully requests this Court grant any further or other relief, whether legal or equitable, which this Court believes necessary and proper.

Dated this 7th day of March, 2025.

PLAINTIFF'S NOTICE OF MOTION AND
MOTION FOR PRELIMINARY INJUNCTION - 28

1

<u>/s/ Jason R. Klinowski</u>
Jason R. Klinowski, Esq.
(Admitted *Pro Hac Vice*)
KLINOWSKI DAMIANO LLP

Kathryn S. Diemer, Esq.
DIEMER & WEI, LLP

PLAINTIFF'S NOTICE OF MOTION AND
MOTION FOR PRELIMINARY INJUNCTION - 29

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 7, 2025, a true and correct copy of the forgoing Notice of Motion and Motion for Preliminary Injunction, along with all internally referenced exhibits, if any, was served electronically to all parties in the above captioned matter at the electronic address as disclosed with the Court and a true and correct copy of the proposed order granting the Motion was further served via e-mail to all counsel of record.

Dated: March 7, 2025                    By: /s/ Jason R. Klinowski

                                                   Jason R. Klinowski, Esq.
                                                   (Admitted *Pro Hac Vice*)
                                                   KLINOWSKI DAMIANO LLP

PLAINTIFF'S NOTICE OF MOTION AND
MOTION FOR PRELIMINARY INJUNCTION - 30