Kathryn S. Diemer
DIEMER WEI LLP
55 S. Market St., Ste 1420
San Jose, CA 95113
(408) 971-6270
kdiemer@diemerwei.com

Jason R. Klinowski
*(Admitted Pro Hac Vice)*
KLINOWSKI DAMINAO LLP
P.O. Box 43404
Birmingham, AL 35243
(205) 644-8881
jklinowski@aglawyer.com

ATTORNEYS FOR MELON CORP.

**UNITED STATES COURT**
**NORTHERN DISTRICT OF CALIFORNA**
**SAN JOSE DIVISION**

| | |
|---|---|
| MELON CORP.<br>            Plaintiff,<br><br>vs.<br><br>SILO TECHNOLOGIES, INC., *ET AL*,<br>            Defendants. | Case No.: 5:24-cv-04781<br><br>Honorable Beth Labson Freeman<br><br>**DECLARATION OF GURDEEP BILLAN IN SUPPORT OF MELON CORP.'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION AND MOTION FOR EXPEDITED HEARING.**<br><br>Complaint Filed: August 6, 2024<br>Hearing Date: June 5, 2025<br>Time: 9 am<br>Courtroom: No. 3, Fifth Floor<br>Trial Date: Not Set |

I, Gurdeep Billan, declare and state as follows:

1.  I am the Executive Director of Melon Corp. ("*Plaintiff*" or "*Melon Corp.*") and, in such position, I am authorized to make this Declaration. I am an adult and, based upon my own personal knowledge, I am competent to provide this Declaration and to testify at trial regarding the statements made in this Declaration. I file this Declaration in support of Melon Corp.'s Motion for

Preliminary Injunction against Defendant Silo Technologies, Inc. ("*Defendant*" and "*Silo*"), and in support of Melon Corp.'s Motion for Expedited Hearing.

2. Melon Corp. seeks injunctive relief against Silo to enforce its interest in the statutory trust created under the Perishable Agricultural Commodities Act, 1930, *as amended*, 7 U.S.C. §§ 499a-499t (the "*PACA*")(2013). The PACA trust assets at issue with respect to the instant Motion for Preliminary Injunction are in the custody and control of third-party customers of Melon Corp., each of whom are PACA Trustees (hereafter, the "*Customers/PACA Trustees,*" each identified in Exhibit A) charged with preserving and delivering such trust assets to and for the benefit of Melon Corp. as a properly perfected PACA trust beneficiary.

3. At all times relevant hereto, Melon Corp. operated its business under a valid United States Department of Agriculture ("*USDA*") issued PACA License, which the USDA has identified as PACA License No. 20220765.

4. Melon Corp.'s Customers/PACA Trustees are as follows:

| **Customer/PACA Trustee Name** | **PACA License No.** |
|---|---|
| Aldays Produce Inc. | 20140482 |
| Arizona Sky Produce Inc. | 20101227 |
| Costco Wholesale Corporation | 19880396 |
| Del Monte Fresh Produce (Texas) Inc. | 19200309 |
| Fordel Marketing LLC | 20180314 |
| Imok Global LLC | 20180645 |
| The Kroger Co. | 19194690 |
| The Midwest's Best Produce Company | 20021026 |
| Mosby Brothers Farms Inc. | 20060623 |
| Mr. Felix Produce Sale LLC | 20220618 |
| JA Pacific Sales Company | 20160477 |
| Palmisano Brothers Produce Co., Inc. t/a Peddler's Son Produce | 19971434 |
| Smart & Final Stores LLC | 20080430 |
| The Ichiban Companies Inc. | 20220661 |
| Tom Lange Company, Inc. | 19711239 |
| Walmart Inc. | 20080266 |

2

5. Melon Corp.'s Customers/PACA Trustees are each PACA licensees and, therefore each a "dealer" of Produce under PACA.

6. Additionally, each of Melon Corp.'s Customers/PACA Trustees are engaged in the business of either buying and selling Produce in wholesale/jobbing quantities, or selling Produce at retail, and, therefore, each is a "dealer" under PACA.

7. All Produce transactions between Melon Corp. and each of the Customers/PACA Trustees involved interstate commerce in that all such Produce transactions involved, *inter alia*, the movement of Produce on or along interstate highways and/or between two or more States.

8. Silo, at all relevant times hereto, was and is the holder of PACA License No. 20210463, and, therefore, is a "dealer" of Produce under PACA.

9. Melon Corp. sold to each of the Customers/PACA Trustees, and the Customers/PACA Trustees bought from Melon Corp., perishable agricultural commodities (hereinafter "*Produce*") including watermelon, cantaloupe, honeydew, strawberries, and other Produce identified in the unpaid invoices attached hereto as Exhibit A. As such, the Customers/PACA Trustees' Produce transactions, and each of them, with Melon Corp. involved Produce the USDA expressly recognizes as "covered commodities" under PACA.

10. The transactions between Melon Corp. and each of the Customers/PACA Trustees complied with PACA because the relevant payment terms were less than thirty (30) days.

11. The Customers/PACA Trustees were each obligated to promptly pay Melon Corp. for the Produce listed in each unpaid invoice identified in Exhibit A within ten (10) days of its receipt and acceptance of said Produce.

12. Melon Corp. sold Produce to the Customers/PACA Trustees as described in the charts included as Exhibit A. In each instance, the Customers/PACA Trustees received and

accepted the Produce and no adjustments have been made on the invoice amount except as listed.

The charts use the following terms which shall have the described meaning:

- A **"Invoice Number"** refers to the number of the invoice under which Plaintiff sold the produce to the Customers/PACA Trustees.
- B **"Date of Invoice or Shipment."** refers to the date which begins the payment term between that Plaintiff and the Customers/PACA Trustees.
- C **"Date Trust Notice Given"** refers to the date that Plaintiff served its invoice containing the statutory trust language on the Customers/PACA Trustees or, otherwise served its notice of intent to preserve trust benefits on the Customers/PACA Trustees.
- D **"Date Payment Due"** refers to the date payment was due based upon the payment term between that Plaintiff and the Customers/PACA Trustees.
- E **"No. of Days Past Due"** refers to the total number of days between the payment due date and the date identified in the Plaintiff's Damages Charts.
- F **"Invoice Amount"** refers to the principal amount owed on each invoice regardless of whether the particular invoice amount qualifies for trust protection.
- G **"Accrued Interest"** refers to the amount of contractual interest which has accrued to date due to the Customers/PACA Trustees' non-payment.
- H **"Payments Received"** refers to any partial payments received or other credits due to the Customers/PACA Trustees with regard to a specific unpaid Invoice Number.
- I **"Outstanding Balance"** refers to the sum of the Invoice Amount Due and Accrued Interest, less any partial payments received or credits due.
- J **"PACA Trust Amount"** refers to the amount owed and remaining unpaid which is entitled to trust protection due to that Plaintiff's satisfaction of the applicable PACA regulations.

13. Melon Corp. has given the Customers/PACA Trustees credit for any and all payments against the full outstanding balances as stated in the charts included in the attached Exhibit A.

14. Each chart reflects the amount due and owing from the Customers/PACA Trustees to Melon Corp. as of the date listed in the chart.

15. Included in Exhibit A are true and accurate copies of examples of Melon Corp.'s unpaid invoices to each Customer/PACA Trustee.

16. As a PACA licensee, Melon Corp.'s unpaid invoices issued to each of the Customers/PACA Trustees contained the following statutory language preserving its beneficial interests in and to the Customers/PACA Trustees' PACA trust assets:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

17. Melon Corp. issued to its Customers/PACA Trustees, and each of the Customers/PACA Trustees received, via e-mail, i-trade, and/or EDI, Melon Corp.'s unpaid invoices identified in Exhibit A.

18. Melon Corp. delivered all invoices identified in Exhibit A to its Customers/PACA Trustees within thirty (30) days of the Customers/PACA Trustees' receipt and acceptance of each shipment of Produce corresponding to each unpaid invoice, and, therefore, all invoices were timely delivered.

19. Melon Corp.'s Customers/PACA Trustees each acknowledged receipt of the Produce identified on each of the unpaid invoices identified in Exhibit A by signing a bill of lading or other proof of delivery upon its receipt and acceptance of the Produce. Attached hereto as Exhibit B are true and correct copies of representative samples of the signed bills of lading or other proofs of delivery Melon Corp.'s Customers/PACA Trustees' signed upon their receipt and acceptance of Produce from Melon Corp.

20. Because each of Melon Corp.'s unpaid invoices involved Produce (i.e., highly perishable commodities) time was of the essence with respect to the parties' respective performance.

21. Therefore, Melon Corp. is a properly perfected PACA trust beneficiary in that Melon Corp. fully complied with all of PACA's statutory mandates necessary to perfect its rights

as a PACA trust beneficiary. As a properly perfected PACA trust beneficiary, all the proceeds or cash due to Melon Corp. in connection with Melon Corp.'s sale of Produce to the Customers/PACA Trustees is held in trust by the Customers/PACA Trustees for the exclusive benefit of Melon Corp. as an unpaid supplier of said Produce.

22.     On or about July 30, 2024, however, Silo demanded diversion of, interfered with, and prevented the lawful operation of the PACA Trusts, and directly caused dissipation thereof, by, *inter alia*, contacting no less than sixteen (16) of Melon Corp. Customers/PACA Trustees and directing them – under the threat of legal consequence – to divert, forward, transfer, and otherwise pay all proceeds from Melon Corp.'s sale of Produce to Silo.  This wrongful communication and outreach to Melon Corp.'s Customers/PACA Trustees was based on Silo's alleged security interests in and to Melon Corp.'s assets and resulted in no less than sixteen (16) of the Customers/PACA Trustees refusing to pay Melon Corp.'s invoices for not less than $1,487,281.10 of Produce sales, causing dissipation of the PACA trust assets as to Melon Corp.

23.     Defendant Silo knew or should have known that these funds were impressed with the PACA Trust by virtue of Silo's knowledge of PACA (as a PACA licensee) and its access to, knowledge about, and control over Melon Corp.'s accounts receivable and invoices.

24.     As of the date and time of this Motion for Preliminary Injunction, Defendant Silo has threatened and interfered with no less than sixteen (16) of Melon Corp.'s customers (i.e., the Customers/PACA Trustees). For example, *see* Exhibit C, Silo Letters to Customers/PACA Trustees Peddler's Son, Fordel Marketing, LLC, and Costco Wholesale. (Hereafter, these letters are identified as the "*Improper Demand Letter(s)*.")

25.     I know the foregoing to be true because each of the sixteen (16) Customers/PACA Trustees, each of which are Melon Corp.'s Produce customers, communicated this fact to me, including forwarding Silo's Improper Demand Letter in most instances.

26. According to the Customers/PACA Trustees and the Improper Demand Letters from Silo itself, Silo directed the Customers/PACA Trustees – under the duress and threat of legal consequence – to divert, forward, transfer, or otherwise pay all proceeds from any accounts receivable due and owing to Melon Corp. (i.e., PACA Trust Assets) to Silo.

27. I further know the foregoing to be true because each Customer/PACA Trustee has confirmed this to me, either by telephone, in person, and/or in writing, and several Customers/PACA Trustees furnished to me the Improper Demand Letter.

28. Silo's Improper Demand Letters to the Customers/PACA Trustees have resulted in no less than sixteen (16) of Melon Corp.'s Produce Customers/PACA Trustees refusing to make full payment promptly with respect to Melon Corp.'s Produce related invoices. *See* Exhibit A.

29. Specifically, on or about July 30, 2024, Silo, through its attorney, Mark Edelson, Esq., sent the Improper Demand Letters to the Customers/PACA Trustees, including some of Melon Corp.'s most critical customers.

30. In the Improper Demand Letters, Silo made, *inter alia*, the following false representations to the Customers/PACA Trustees:

> "Please be advised that Melon defaulted on its obligations to Silo under the Silo Agreements and is indebted to Silo for the Balance Owed."

> "Silo is aware that You possess accounts receivables due and owing to Melon or are otherwise indebted to Melon. Under UCC § 9-406, after receipt of this notice, "the account debtor may discharge its obligation by paying the assignee and may not discharge the obligation by paying the assignor." In other words, You may only satisfy the debt that You owe Melon by paying Silo."

> "You are hereby notified to immediately pay all monies in your possession currently due and owing to Melon and all sums in your possession that would be payable to Melon to Silo, care of the undersigned, until the Balance Owed accrues."

> "Your failure to remit to Silo all sums owed to Melon up to the Balance Owed will constitute a violation of the UCC and interference with the Silo Agreements."

7

*See* Ex. C.

31. Attached hereto as Exhibit C is a true and correct copy of Silo's Improper Demand Letters.

32. According to the Improper Demand Letters, unless the Customers/PACA Trustees diverted and paid to Silo every penny owed or owing to Melon Corp., the Customers/PACA Trustees would have violated the UCC and committed a tort, subjecting them to liability and potential suit by Silo.

33. In response to Silo's Improper Demand Letters, counsel for Melon Corp. wrote to its the Customers/PACA Trustees and stated, in relevant part, the following:

> Melon Corp. is the holder of PACA License No. 20220765 and utilizes the invoice method (7 U.S.C. § 499e(c)(4)) to preserve its PACA trust rights in and to every load of Produce it sells or otherwise transfers to its customers.
>
> In turn, PACA requires Melon Corp.'s Produce customers to hold Melon Corp.'s Produce, and all related receivables and the proceeds from the sale of said Produce in trust for the benefit of Melon Corp. This trust obligation arises upon receipt of the Produce and continues until full payment for said Produce is made to Melon Corp. (7 U.S.C. § 499e(c)(2)). Stated differently, with respect to any funds due to Melon Corp. for its sale of Produce to a customer on credit, PACA requires Melon Corp.'s customer to hold those funds in trust for the benefit of Melon Corp. As a PACA Trustee, it is unlawful for you to divert PACA trust assets to non-trust beneficiaries, such as Silo, and payment to Silo will not discharge any obligation you have to Melon Corp. under PACA's trust and unfair conduct provisions.
>
> Importantly, the Produce you purchased and received from Melon Corp. likewise includes Produce that Melon Corp. itself purchased from other PACA trust beneficiaries. Therefore, Melon Corp. is also a PACA Trustee for its Produce suppliers and, like you, it is obligated, as a fiduciary, to make full and prompt payment to its produce sellers or producers.

*See* Ex. D.

34. Attached hereto as Exhibit D is a true and correct copy of Melon Corp.'s letter to the Customers/PACA Trustees.

35. As a direct and proximate result of Silo's issuance of its Improper Demand Letters, Customers/PACA Trustees refused to pay Melon Corp.'s Produce related invoices in the current aggregate amount of not less than $1,487,281.81, inclusive of interest charges.

36. To this day, the Customers/PACA Trustees continue to withhold PACA Trust Assets from Melon Corp.

37. The Customers/PACA Trustees have each communicated to me, either by telephone, in person, or in writing, that the only reason that they are not paying the PACA Funds to Melon Corp. in the normal course of business is because of the threat, uncertainty, and risk of double liability created by Silo's Improper Demand Letters to the Customers/PACA Trustees. *See* for example Exhibit E, Email from Corporate Counsel for Tom Lange Co., dated August 9, 2024, stating that "[w]e have received your letter and it seems we are caught in the middle of a disputed lien. I am sure you can understand our position of having no interest in taking on unnecessary legal liability due to your dispute with Silo. As such, we will not be remitting payment to anyone until we receive a Court Order or a resolution between Melon Corp and Silo that eliminates our risk of paying the wrong party and having to double pay on these files…. In the meantime, we will simply hold these payables until legal direction is given." *See also* in Exhibit E, Costco Wholesale Letter to Melon Corp, explaining that "Costco is not in a position to adjudicate the merits" of the dispute between Silo and Melon Corp., and asking both companies to "jointly direct Costco to whom to remit the funds."

38. The Customers/PACA Trustees continue to withhold PACA Trust Assets from Melon Corp. because of Silo's Improper Demand Letters, and are awaiting either consensus and joint direction from both parties, or a Court order clarifying who is the proper recipient of the PACA Funds.

39. Notwithstanding the time-sensitive nature of Melon Corp.'s contracts with the Customers/PACA Trustees, Melon Corp. communicated with the Customers/PACA Trustees, both orally and in writing, to provide notice that their failure or refusal to promptly pay the unpaid invoices constated a violation of PACA and to provide the Customers/PACA Trustees an opportunity to cure the same.

40. Following Silo's publication of its Improper Demand Letter to Melon Corp.'s Customers/PACA Trustees, Melon Corp. spent months communicating with both Silo and its Customers/PACA Trustees to negotiate an amicable and private resolution to the hardship Silo's Improper Demand Letter caused.

41. Specifically, Melon Corp. communicated with its Customers/PACA Trustees in writing and over the phone urging each of them to pay all Produce related invoices promptly and explaining how any refusal to pay Melon Corp. constituted a violation of PACA.

42. With respect to Silo, Melon Corp. demanded the retraction of its Improper Demand Letter and, after Silo's refusal, Melon Corp. proposed settlement terms that included Melon Corp.'s voluntary dismissal of certain claims in exchange for Silo's agreement to jointly direct the Customers/PACA Trustees to release the PACA Funds to Melon Corp, which Silo ultimately refused.

43. Silo's interference with the lawful operation of the Customers/PACA Trustees' PACA trusts has deprived Melon Corp. of not less than $1,487,281.81 in PACA Trust Assets, inclusive of interest charges.

44. Silo's interference and improper threats have caused Melon Corp. extreme financial distress with immediate and dire consequences. As a direct result of Silo's interference and refusal to jointly direct the Customers/PACA Trustees to pay the PACA Funds to Melon Corp. in

compliance with federal law, Melon Corp. is now facing an immediate liquidity crisis that may result in bankruptcy.

45.     In fact, Melon Corp. has not been able to fully pay all creditors, including its third-party suppliers who are PACA trust beneficiaries, and faces both regulatory and civil legal action. To further explain, Melon Corp. is a corporate trustee of the PACA trust with respect to the Produce it receives from its suppliers (meaning Melon Corp., like many Produce companies, is simultaneously a PACA Beneficiary and a PACA Trustee). As a direct result, all of Melon Corp.'s Produce related accounts receivable, the proceeds of Melon Corp.'s accounts receivable, and any cash or funds commingled with the proceeds of Melon Corp.'s Produce related accounts receivable, wherever they exist, are all impressed with the PACA trust, held for the exclusive benefit of the PACA Beneficiaries, and subject to PACA's rules, regulations, and duties.

46.     Melon Corp. is the corporate trustee of its PACA Trust Assets because: (i) it is the holder of a license to buy and sell Produce, which the USDA issued to Melon Corp. and which makes Melon Corp. a dealer of Produce under PACA; (ii) it is engaged in the business of buying and selling wholesale quantities of Produce in interstate commerce, and; (iii) is legally obligated to comply with PACA's trust and unfair conduct provisions (e.g., a duty to maintain its PACA Trust Assets in a manner that insures they are both sufficient in amount and freely available to make full payment promptly to its PACA trust beneficiaries, a duty to preserve PACA Trust Assets, a duty not to dissipate PACA Trust Assets, etc.).

47.     Based on the Customers/PACA Trustees' statements, they are presently prepared to pay the funds to Melon Corp. as the PACA beneficiary as soon as they receive a joint letter of direction or an order of Court providing such direction. *See*, *e.g*., Ex. E.

48.     With each passing day, risk of the Customers/PACA Trustees' continued dissipation of Melon Corp.'s PACA Trust Assets increases. Each dollar which is allowed to be paid out to non-

trust creditors, such as the Customers/PACA Trustees' secured lenders, landlords, insurers, service providers, or utilities, may irreparably deplete the PACA Trust and irreparably damage and prejudice Melon Corp. as the PACA trust beneficiary.

49. Moreover, the Customers/PACA Trustees' continued failure or refusal to pay the PACA Funds to Melon Corp. in the ordinary course of business, as required by PACA, has resulted in Melon Corp.'s inability to maintain its PACA trust assets in a manner sufficient to pay its PACA trust beneficiaries and, in fact, Melon Corp. owes substantial sums to its unpaid suppliers of Produce for PACA trust protected transactions.

50. Silo's blatant interference with Melon Corp.'s beneficial interest in and to the PACA Funds has forced Melon Corp. and its principals to deplete their assets, terminate employees, and otherwise significantly downsize its operations.

51. Based on my over 15 years of experience in the operation of a Produce seller and in the Produce business in general, I have found that when a Produce buyer refuses to pay a Produce seller for several months, it has inevitably led to dissipation of the PACA trust.

52. The Court's assistance is critical in preventing the financial ruin of Melon Corp. and substantial injury to all of Melon Corp.'s PACA trust beneficiaries.

53. Without the Court's intervention, Melon Corp. will be wholly unable to pay its PACA trust beneficiaries and this may, in turn, will cause a cascading effect of non-payment to other unpaid Produce sellers in the supply chain (e.g., Fordel Marketing), which PACA is intended to prevent and protect.

54. Simply put, the foregoing risks a snowball of non-payments, defaults, litigation, and potential bankruptcies, all of which will retard, delay, injure, and deteriorate the various PACA trust assets.

55.  Lastly, the improper acts of Silo have damaged and continue to damage Melon Corp.'s commercial relationships and goodwill with the Customers/PACA Trustees (its primary purchasing customers), and with Melon Corp.'s suppliers.

**I declare the above statements to be true and correct under penalty of perjury as set forth in 28 U.S.C. § 1746(2).**

DATE: February 21, 2025

Gurdeep Billan